Kenneth BERDICK

v.

The UNITED STATES.

Nos. 493-78–495-78.

United States Court of Claims.

Dec. 12, 1979.

Eugene C. Heiman, Miami, Fla., attorney of record, for plaintiff. Heiman, Krieger, Freidin & Silber, Miami, Fla., of counsel.

Thomas W. Trigg, U. S. Dept. of Justice, with whom was Acting Asst. Atty., Gen. Alice Daniel, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, KASHIWA and KUNZIG, Judges.

## OPINION

KUNZIG, Judge:

This case arises from the medical practice of plaintiff Kenneth Berdick, a physician in Florida who treated, almost exclusively, patients insured under the Supplemental Medical Insurance Program, 42 U.S.C. § 1395jj (1976), (Medicare). In 1976, Berdick was convicted before a Federal District Court on charges that he made false statements to the Government in violation of 18 U.S.C. § 1001 (1976).[1] Berdick subsequently became a plaintiff in this court seeking, among other things, recovery of Medicare reimbursements on claims other than those on which he was convicted. The Government has counterclaimed, alleging that in the course of submitting the false claims, Berdick also violated the False Claims Act[2] and is now subject to its penalties.

The case is before us on (1) the Government's motion to dismiss portions of Berdick's petitions which defendant alleges are outside our jurisdiction, and (2) the Government's motion for partial summary judgment on its counterclaim No. 2 (the second of 10).[3]

The court agrees with the Government on both motions.

We dismiss those portions of plaintiff's petitions which state claims on which this court can grant no relief. We further hold that the indisputable facts adduced at plaintiff's criminal trial also establish his liability under the False Claims Act, and we grant the Government's motion for partial summary judgment on its second counterclaim.[4]

The main surviving issues in the case—whether the Government wrongfully withheld Medicare reimbursement payments from Berdick, and whether the Government is entitled to recover amounts already paid—remain to be resolved at trial.[5]

### History of the Case

In July 1976, a Federal grand jury in Miami handed down a 119-count indictment charging Berdick with knowingly making false statements on Medicare claim forms

---

1. 18 U.S.C. § 1001 (1976) reads as follows: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

2. The False Claims Act, 31 U.S.C. § 231–35 (1976), states in pertinent part: "Any person not in the military or naval forces of the United States, or in the militia called into or actually employed in the service of the United States, who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or

approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; * * *."

3. The other counterclaims, not now before the court, essentially ask for repayment of monies disbursed to plaintiff. The first is a larger-scale claim under the False Claims Act; Counterclaims 3–6 seek damages in deceit; in the alternative, Counterclaims 7–10 seek restitution of money paid plaintiff by mistake.

4. $72,000, plus twice the amount of actual damages the Government incurred as a result of these false claims, plus costs.

5. See discussion of False Claims Act counterclaim, *infra*.

submitted to the Government. Essentially, the Government charged Berdick with requesting payment from the United States for medical tests on patients though those tests never were performed.

Evidence was presented at his criminal trial that, of the more than 30,000 patients Berdick treated in the five years prior to his conviction, over 25,000 were covered by Medicare.

After a lengthy trial, a jury convicted Berdick of submitting 42 false "Request[s] for Medicare Payment,"[6] (Under the Medicare program, patients assigned to Berdick their right to payment by Medicare after treatment by Berdick. He then filed a reimbursement form and was paid by the local Medicare insurance carrier, Group Health, Incorporated.) The District Court for the Southern District of Florida entered judgment on December 20, 1976, sentencing Berdick to 42 concurrent two-year prison terms and imposing a $45,000 fine. On appeal, the conviction was upheld. *United States v. Berdick*, 555 F.2d 1329 (5th Cir. 1977), *cert. denied*, 434 U.S. 1010, 98 S.Ct. 721, 54 L.Ed.2d 753 (1978).

When the investigation into Berdick's possible criminal conduct became known to Group Health, Incorporated, they immediately suspended all payments to Berdick. Group Health, Incorporated, continued to pay directly those patients who were treated and then billed by Berdick, but refused to pay on any claim assigned to Berdick by a patient.

In 1977, after his conviction, Berdick filed three actions in the United States District Court for the Southern District of Florida, seeking payment of money withheld and other relief. The District Court dismissed all three complaints for lack of subject matter jurisdiction and ordered the cases transferred here. Subsequently, plaintiff timely filed three petitions in this court, Nos. 493–78, 494–78, and 495–78. The petitions were consolidated on March 16, 1979, by the trial judge.

*Government's Motion to Dismiss—Lack of Jurisdiction*

As a preliminary matter and for the sake of clarity in the instant suit, we shall first address the Government's motion to dismiss certain portions of the petitions. This should serve to clear out a great deal of the underbrush that clutters this case.

Defendant's motion to dismiss addresses: (I) all but the first count of the petition in 493–78[7]; (II) all of the petition in 494–78[8]; and (III) paragraphs 26 and 27 together with precatory paragraphs A, C, D, and E of Count 1[9]; paragraph 34 and precatory paragraphs B, C, D, and E of Count 2[10];

---

**6.** 36 of which are the subject of defendant's second counterclaim.

**7.** The counts on which dismissal is sought in No. 493–78 are:
    *Count 2*—alleges slander and defamation.
    *Count 3*—loss of business due to slander.
    *Count 4*—sues private parties.
    *Counts 5 through end*—seek damages because of alleged tortious interference by Government and private parties on defendant's business relations with individual patients.
    *Count 1*—not subject to the motion to dismiss, seeks accounting and payment of outstanding reimbursement claims.

**8.** The single-count petition in No. 494–78 demands injunctions, a temporary restraining order and a declaratory judgment.

**9.** *Count 1*—subject to motion to dismiss are:
    paragraph 26—administrative remedies exhausted.

paragraph 27—no adequate remedy at law.
    paragraph A—accounting, payment and status report on unpaid claims (repetitious).
    paragraph C—order requiring specific notice of fraud allegations.
    paragraph D—repetitive.
    paragraph E—injunctions.
    paragraph B—which remains, seeks payments of reimbursement claims.
    The remaining numbered paragraphs of Count 1 set forth preliminary facts.

**10.** *Count 2*—subject to motion to dismiss in No. 495–78 are:
    paragraph 34—no adequate remedy at law.
    paragraph B—specific notice of fraud allegations.
    paragraph C—payment within reasonable time.
    paragraph D—periodic accounting and status reports on claims.
    paragraph E—injunction.
    paragraph A—which remains, seeks payment on unpaid claims.

along with all of Count 4 of the petition in No. 495–78.[11]

Plaintiff argues that the Government cannot now move to dismiss his petitions on jurisdictional grounds because his case was transferred here by order of the United States District Court for the Southern District of Florida.

▮ Plaintiff contends that the District Court's order compels us to rule on the merits of all matters in the petitions. We cannot agree. We may evaluate our own jurisdiction at any time. *Louisville & Nashville RR. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Mansfield, Coldwater & Lake Michigan Rly. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884); Rule 38(b), (h).

The governmental consent to be sued in this court has always been narrowly construed, *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957), and no amount of transferring from another court will create jurisdiction here when none existed previously.

The claims defendant seeks here to have dismissed, in the main, clearly sound in tort, ask for equitable relief, or seek damages against private persons. As outlined in detail below, we have no jurisdiction to grant such relief.

▮ All but the first count of the petition in No. 493–78 concern plaintiff's claims exclusively against private individuals (named defendants include Group Health, Incorporated and the President of Group Health) and/or tort claims against the Government. Plaintiff also claims damages from those individuals and for the Government's alleged defamation, intentional infliction of emotional distress, tortious interference with business relationships, and conspiracy. Clearly each of these latter claims sounds in tort, and we have no jurisdiction to hear such claims. *Algonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 428 F.2d 1241 (1970); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002 (1967); 28 U.S.C. § 1491 (1976). As to the former, we have jurisdiction to render only judgments on claims "against the United States." 28 U.S.C. § 1491 (1976). While the claims naming Joseph Califano, former Secretary of Health, Education and Welfare, may possibly be construed as against the United States, the counts naming private individuals are clearly outside our jurisdiction.

▮ Plaintiff styles his petition in 494–78 "Petition for Injunctive Relief" and alleges that defendant and others pursued a "course of conduct . . . designed to harass, humiliate, and to economically destroy the Plaintiff . . . ." He seeks an injunction to force cessation of such activity. We have no jurisdiction to hear cases seeking injunctive relief. *United States v. Jones*, 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90 (1889). Plaintiff also asks for a declaratory judgment outlining his rights under the Medicare Act. We have no jurisdiction to issue declaratory judgments in cases other than those arising under section 7428 of the Internal Revenue Code of 1954. *United States v. King, supra.*[12]

The counts of the petition in No. 495–78 are mainly repetitious, again, naming private individuals as defendants, alleging violation of plaintiff's civil rights under 42 U.S.C. § 1983 (1976) or seeking numerous declaratory orders and injunctions. We have no such jurisdiction.

---

The remaining numbered and lettered paragraphs in Count 2 set forth plaintiff's preliminary facts and allegations.

11. *Count 4*—subject in its entirety to this motion, sues only private individual employees of Group Health.

    *Count 3*—not subject to the motion, seeks a writ of mandamus compelling Group Health and Califano to pay plaintiff's claim. Though somewhat inartfully stated in terms of remedy sought, we treat it as properly stating demand for money presently due. (495–78)

12. This court does have limited declaratory judgment jurisdiction when such is issued incident to a money judgment. *Austin v. United States*, 206 Ct.Cl. 719, 723, cert. denied, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975). However, this is not the situation in the instant case.

As outlined in (I), (II), and (III) above, the Government's motion to dismiss must be granted in its entirety.[13]

At this point, plaintiff has only fragments of his original petitions remaining in this court. He now seeks solely reimbursements under the Medicare program which plaintiff thinks were wrongfully withheld. This is the kind of petition which we *can* entertain and on which we can properly grant relief if relief is warranted. *Whitecliff, Inc. v. United States*, 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). Plaintiff is free to litigate this claim in our trial division.

### Government's Motion for Partial Summary Judgment—False Claims Act Counterclaim

Most damaging to Berdick is the Government's second of 10 counterclaims,[14] filed February 26, 1979. Defendant has now moved for summary judgment on that counterclaim, which alleges that Berdick, in the course of filing the Medicare claims that led to his conviction, also violated the False Claims Act. 31 U.S.C. §§ 231–35 (1976). The Government is seeking the $2,000 statutory penalty set out in the False Claims Act for each of the 36 false Medicare reimbursement claims submitted by Berdick. It further seeks an adjudication of liability and return of sums where already paid by the Government (doubled in accordance with the law).

■■ There is no doubt that our jurisdiction extends to the Government's False Claims Act counterclaim. *Brown v. United States*, 207 Ct.Cl. 768, 524 F.2d 693 (1975); 28 U.S.C. § 1503 (1976). The only issue presented here on defendant's motion for summary judgment is whether Berdick's criminal conviction with regard to the 36 claims (the subject of this counterclaim) establishes his liability as a matter of law with regard to the same 36 claims under the False Claims Act. We hold that the facts developed at Berdick's trial, which are the basis of his criminal conviction under 18 U.S.C. § 1001, are indeed sufficient to prove also his violation of the False Claims Act and his liability to the Government thereunder.

■ It is well established that a criminal defendant is estopped at a subsequent civil proceeding to deny facts established at his criminal trial when the parties to the two proceedings are identical, as they are here. *Brown v. United States, supra* at 788, 524 F.2d at 705; *see also, Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568, 71 S.Ct. 408, 95 L.Ed. 534 (1951); *Local 167 v. United States*, 291 U.S. 293, 298–99, 54 S.Ct. 396, 78 L.Ed. 804 (1934). The jury's verdict in Berdick's criminal trial necessarily established the following facts:

—that he made or caused to be made the false, fictitious, or fraudulent statements on these particular requests for Medicare payment;

—that he knew the falsity of the statements when he made them or caused them to be made.

No more is necessary to establish liability under the False Claims Act, which imposes a penalty on any person who ". . . presents . . . for payment . . . any claim upon or against the government . . . knowing such claim to be false . . . ." (*supra*, note 2). Since 18 U.S.C. § 1001 and 31 U.S.C. § 231 both deal with similar activity—knowingly making and presenting a false claim to the Government—a criminal conviction under the former statute can establish civil liability for violations of the latter statute. *Brown v. United States, supra* at 788, 524 F.2d at 705.

Berdick has argued that imposing the sanctions of the False Claims Act in addi-

---

13. We note in passing that plaintiff also has moved to strike these self-same points raised as affirmative defenses in defendant's amended answer. The affirmative defenses (lack of jurisdiction over torts, equitable relief and suits against private parties) are identically the subject of defendant's motion to dismiss on jurisdictional grounds, *supra*. Since we grant defendant's motion to dismiss, plaintiff's motion to strike is correspondingly denied.

14. See Note 3; *supra*.

tion to his prison sentence and fine, places him in double jeopardy in violation of the Fifth Amendment, and that imposition of such penalties constitutes cruel and unusual punishment in contravention of the Eighth Amendment. He also states that he should be granted an evidentiary hearing on the forfeitures to be imposed and contends that the motion for summary judgment is not ripe for adjudication. We can find no merit in any of these contentions.

■ First, the forfeitures required by the False Claims Act are civil, not criminal, *United States ex rel Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943); *see also, One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 237, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972), and the double jeopardy provisions of the Fifth Amendment do not apply to civil contexts. Indeed, it is "well accepted that for one act a person may be liable both to pay damages and to suffer a criminal penalty." 317 U.S. at 549, 63 S.Ct. at 387. Plaintiff's assertions that the False Claims Act forfeitures constitute cruel and unusual *punishment* must fail for the same reason.

An evidentiary hearing on the forfeitures is needless, since plaintiff is estopped to deny the fact essential to his criminal conviction. And, since Berdick's case was appealed all the way to the Supreme Court, *United States v. Berdick*, 555 F.2d 1329 (5th Cir. 1977), *cert. denied*, 434 U.S. 1010, 98 S.Ct. 721, 54 L.Ed.2d 753 (1978), plaintiff cannot argue realistically that his criminal conviction is not a final judgment for purposes of collateral estoppel.

In *Brown, supra*, we had occasion to rule in a case with closely analogous facts. There, former Chief Judge Cowen, writing for the court, held that a Government contractor was estopped from denying his fraudulent activity as to those contracts which formed the basis for his criminal conviction of bid rigging. Summary judgment under the False Claims Act was then granted as to each fraudulent purchase or-

der submitted to the Department of Housing and Urban Development on which the plaintiff was convicted. Those on which he was not already convicted were remanded for trial.

The logic of the *Brown* case is controlling here, since the Medicare claim forms on which Berdick was convicted under 18 U.S.C. § 1001 are the same ones for which we today grant summary judgment under the False Claims Act.

As quoted above, the False Claims Act provides for each false claim a forfeiture of $2,000 plus twice the amount of damages actually sustained by the United States. *See* 31 U.S.C. § 231 (1976). Following the unambiguous language of the statute and prior case law, we have no difficulty holding that defendant is entitled to $2,000 for *each* of 36 false Medicare reimbursement claims for a total of $72,000. *Miller v. United States*, 213 Ct.Cl. 59, 71–72, 550 F.2d 17, 24 (1977); *Brown, supra*, at 789, 524 F.2d at 705. Plaintiff is also liable for twice the amount of damages the Government incurred as a result of these false claims. The exact amount remains to be determined at trial.[15]

In summary, we hold (1) that those portions of plaintiff's petitions stating claims outside our jurisdiction must be dismissed without prejudice and returned to the appropriate district court. Further, since the facts developed at plaintiff's earlier criminal trial cannot now be disputed by him, we hold (2) plaintiff liable to the Government under the False Claims Act.

Accordingly, after careful consideration of the parties' submissions, and without oral argument, defendant's motion to dismiss is granted as to the following portions of the plaintiff's petitions: (I) all but the first count of the petition in 493–78; (II) all of the petition in 494–78; and (III) paragraphs 26 and 27 together with precatory paragraphs A, C, D, and E of Count 1; paragraph 34 and precatory paragraphs B, C, D,

---

15. This figure consists of twice the amount of money the Government already paid plaintiff on these 36 claims. The Government in its submissions estimates the amount already paid at $1,545.75.

and E of Count 2; along with all of Count 4 of the petition in 495–78. Said claims are returned to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1506 (1976), together with a certified copy of the record made here.

In addition, defendant's motion for partial summary judgment on its second counterclaim is granted. Defendant is entitled to judgment of $72,000 plus costs, (with any further damages doubled as required by law) all computed together and offset against possible recoveries by plaintiff, if any should be adjudged. The case is remanded to the trial division for further proceedings not inconsistent with this opinion.