**DOKO FARMS, a Partnership, and James Porter, Allison V. Barnett, L.D. Smith, William T. Curry,**

v.

**The UNITED STATES.**

No. 66–86C.

United States Claims Court.

Aug. 7, 1987.

James H. Milam, Lubbock, Tex., for plaintiff; John R. Cope, and Albert B. Krachman, of counsel.

Judith Rabinowitz, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

YOCK, Judge.

This case is currently before the Court on cross-motions for summary judgment. The Court, on its own motion, finds that it is without jurisdiction over this action. As a result, the parties' cross-motions are denied. Additionally, because this Court believes it would be in the interest of justice to do so, this case is to be transferred to the District Court for the Northern District of Texas, pursuant to 28 U.S.C. § 1631 (1982).

### Factual and Procedural Background

Since the plaintiffs' road to the United States Claims Court has been a long and complicated one, perhaps it would be best to quote from one of the prior Circuit Court opinions that has concisely discussed the factual background in this matter.[1] In *United States v. O'Neil,* 709 F.2d 361, 364–65 (5th Cir.1983) (*O'Neil* I), the Fifth Circuit summarized the general background of this case as follows:

> The government brought these cases (the "O'Neil" cases) along with seven others, recently decided by us under the style of *United States v. Batson, et al.,* 706 F.2d 657 (5th Cir.1983) (the "Batson" cases). The general factual background of each of these O'Neil cases and of the seven Batson cases is basically similar and is set out in detail in the *Batson* opinion. Since procedural issues are controlling in the O'Neil cases considered here, we will only generally outline the background facts.

> The appellees were participants in the Upland Cotton Price Support Program in Gaines County, Texas. Under this pro-

gram the USDA was authorized to make loans and subsidy payments to cotton producers through the Commodity Credit Corporation and to require the "set aside" of cropland, if necessary, to avoid excessive supplies of cotton. 7 U.S.C. § 1444(e). The program was administered locally by the County Committees of the Agricultural Stabilization and Conservation Service ("ASCS") within the USDA. 7 C.F.R. § 718.4 (1974). In 1973 the appellees, as participants in the program, were eligible for subsidy payments of fifteen cents per pound of cotton. This subsidy was based upon the number of cotton allotments owned or leased and the "average yield" of those allotments in pounds per acre. 7 C.F.R. § 722.812.

In the spring of 1973 the USDA began investigating the cotton payments in Gaines County, which in 1972 had been abnormally high, about five times the level experienced in other counties. It suspected that cotton allotments or their yield figures were being manipulated to inflate payments in violation of program regulations. In November 1973, as a result of the investigation, the USDA suspended the members of the Gaines County ASCS Committee, who were responsible for administering and enforcing the regulations governing the upland cotton program, and sent Clifton Adams, Acting Assistant to the ASCS Deputy Administrator, from the ASCS Washington, D.C. office to assume the County Committee's functions.

Adams subsequently rendered "determinations" against certain of the participants in the Gaines County program, including the appellees, finding that they had violated program regulations and requiring refunds of all payments received in connection with the program. Adams found that the appellees in some cases

---

1. *The plaintiffs in this Claims Court action (Doko Farms Partnership) were part of a group of eleven defendants, sued initially in 1979 by the United States Government in the District Court for the Northern District of Texas, on a Government claim for overpayment of cotton subsidies. Since Doko Farms was one of four groups of defendants in the District Court suits*

that filed counterclaims against the United States, they became part of the *O'Neil* group of cases that are discussed herein. The other seven group of defendants did not file counterclaims in the Government's initial action and became part of the *Batson* group of cases discussed herein.

had adopted a "scheme or device" to defeat the purpose of the upland cotton program by manipulating transfers of their allotments and allotment yields in violation of 7 C.F.R. § 722.817(b) (1974) and in others had avoided payment limitations in violation of 7 C.F.R. Part 795. The appellees maintained that all of their transfers had been in accordance with the regulations. Some also claimed they had not, or had not directly, received program payments. As required by program regulations, 7 C.F.R. Part 780, Adams held hearings and subsequently issued "redeterminations," which affirmed his original findings. The appellees then took appeals, also provided for by the program regulations, to the State ASCS Committee and then to a USDA hearing officer in Washington, D.C. Adams' "redeterminations" were affirmed at each of these levels. Similar administrative determinations and proceedings were taken respecting the various parties involved in the Batson cases.

In June and July 1979 the government filed several suits in federal district court for the refunds ordered by these administrative determinations. The four sets of appellees in the present appeals counterclaimed in the respective suits against them for the damages they had suffered from having been placed on the Federal Debt Register because of the disputed refunds.[1] All parties in each of the suits moved for summary judgment, and on April 3, 1981 the district court granted the defendants' motions in each of the four O'Neil cases, and in each of the seven Batson cases which were also before it. It included in the separate judgments issued in each of the four O'Neil cases the statement that *"[t]he defendants' counterclaim against the plaintiff is severed from the cause of action alleged by plaintiff and will be tried separately and at a later date."* [Emphasis in original.]

The government filed a timely appeal in each of the seven Batson cases on May 29, 1981, but took no action with respect to appeal of any of the O'Neil cases. On September 15, 1981 the district court, in response to motions filed by appellees in the severed cases during August 1981, ruled in a "Memorandum and Order" that the April 3, 1981 judgments in the original four O'Neil cases had become final at the expiration of the sixty-day appeal period, and rendered judgments against the government in the severed cases dealing with the counterclaims of these appellees. It stated that the April 3 judgments became final notwithstanding the unresolved counterclaims because those claims had been severed under Fed.R.Civ.P. 21, and were thus no longer a part of the same suits.

On October 27, 1981 the government filed in each of the original O'Neil cases a Rule 60(b) motion for relief from the April 3, 1981 judgment, alleging a good-faith belief that it had not been a final, appealable order because of the pending counterclaims. The district court denied each of these motions on November 2, 1981, holding that "a Rule 60(b) motion may not substitute for a timely appeal," and that "an attorney's misunderstanding of the law is not the type of mistake or excusable neglect contemplated by Rule 60(b)."

In November 1981 the government took timely appeal from the judgments entered, pursuant to the September 15, 1981 "Memorandum and Order," in the severed counterclaim suits and from the district court's November 2, 1981 denial of its Rule 60(b) motions.

---

[1] Individuals listed on the Federal Debt Register were not barred from participating in federal agricultural programs, but could receive no loans or subsidies under them until their names were removed from the list.

The counterclaims, for the most part, sought (1) the removal of the appellees' names from the Register, (2) the release of money withheld, and (3) the return of cancelled cotton allotments.

As indicated above, this case started out in 1979 with the United States Government as plaintiff suing Doko Farms (and eleven other farming individuals and groups) as defendants in the District Court for the Northern District of Texas. In that action, the Government was suing to enforce an administratively determined debt, *i.e.,* a fi-

nal determination by the Agricultural Stabilization Conservation Service (ASCS) that Doko Farms (and others) had violated the 1973 Upland Cotton Price Support Program, 7 U.S.C. § 1444(e), and owed the Government for the amounts administratively determined to be overpayments paid by the Government to the defendants (farmers) for cotton subsidies. In short, the case started out in the District Court as a Government claim against private parties and jurisdiction was predicated on 28 U.S.C. § 1345, which grants original and exclusive jurisdiction to the District Courts in all civil actions commenced by the United States.

Four of the defendants (farmers) in the District Court action, including the plaintiffs here (Doko Farms), filed answers which included counterclaims. Basically, Doko Farms and the other four defendant groups (the O'Neil group of defendants) contended in the District Court action that the debt was invalid because the statute of limitations had run, the regulations under which the debt was administratively established were unconstitutionally vague, and that the administrative process had denied them due process of law. Based on these affirmative defenses to the Government claim for cotton subsidy overpayments, the four defendants counterclaimed to have the District Court direct the Government to: (1) remove their names from the Federal Debt Register, (2) direct the release of impounded money due them from their participation in other agricultural subsidy programs, and (3) direct the return of all cancelled cotton allotments.[2] The theory of the four O'Neil defendants was that if the District Court found that the Government's underlying claim was invalid, the District Court should order complete relief and place the defendants back in the position they were in prior to the Government asserting its claim against them.

Seven of the eleven defendants in the District Court action (the *Batson* group of cases) simply filed answers, which included the affirmative defenses of statute of limitations, unconstitutionally vague regulations, and due process violations. No counterclaims were filed by the seven Batson defendants.

After the parties filed cross-motions for summary judgment in all eleven of the cases, the District Court on April 3, 1981, found for the defendants (farmers). The court found that (1) the statute of limitations had expired before the Government had filed suit which barred the Government claim and (2) that the ASCS regulations at issue were unconstitutionally vague. *See, e.g., United States v. Doko Farms*, Civil Action No. CA–5–79–72, Memorandum and Order dated April 3, 1981. The court then entered a "take nothing judgment" in favor of all eleven defendants including the plaintiffs here (Doko Farms). However, the judgment in favor of the four O'Neil defendants that had filed counterclaims included the following language:

> The defendants' counterclaim against the plaintiff is severed from the causes of action alleged by plaintiff and will be tried separately and at a later date.

*See, e.g., United States v. Doko Farms*, Civil Action No. CA–5–79–72, Judgment dated April 3, 1981.

Following the judgments being filed in all of the eleven cases in the District Court, the Government immediately appealed only the seven judgments rendered in the seven *Batson* cases to the United States Court of Appeals for the Fifth Circuit. The Government did not immediately appeal the four *O'Neil* cases, believing that the District Court had merely bifurcated the counterclaims pursuant to Rule 42(b), Fed.R.Civ.P., and thus there was no final judgment on which to base an appeal. The Government intended to file these appeals once the

---

**2.** Doko Farms and the other defendants in the District Court action were placed on the Federal Debt Register (also called the Claims Control Record) *only* because the ASCS determined that the Government had overpaid cotton subsidies to the defendants and thus the defendants were indebted to the Government for these over-

payments. Government subsidy payments otherwise due the defendants were impounded once the defendants were placed on the Federal Debt Register, pending the final determination of the debt. *See* 7 C.F.R. § 13, *see also United States v. Medlin,* 767 F.2d 1104, 1106 (5th Cir. 1985).

counterclaims had been decided and a final judgment rendered in these cases.

However, on September 15, 1981, in response to the O'Neil defendants' motion for summary judgment on their counterclaims, the District Court found that the Government had allowed the judgment against it to become final by not appealing within the required 60 days. Since the Government's claim was now final and the debt extinguished, the court granted the defendants' motion and ordered the Government to remove the O'Neil defendants from the Federal Debt Register and to release the impounded funds earned. The District Court reasoned that:

In their reply to the defendants' counterclaims, the government admitted defendants' names were placed on the Claims Control Record, a register of those persons who have received program payments in excess of entitlement. The Government also stated the effect of a Claims Control Record listing is that payments accruing to a listed farmer are withheld pending resolution of disputed overpayments. Finally, the government admitted the ASCS had withheld payments due defendants for their participation in programs administered by the Department of Agriculture.

It appears that the listing in the Claims Control Record as well as the withholding of due payments were related to the main cause of action in these cases. Since the court found the defendants were not liable for the alleged overpayments, there appears to be no legal basis for the retention of monies due defendants. No issue exists as to any material fact and therefore the defendants are entitled to summary judgment as a matter of law.

*See United States v. Doko Farms,* Civil Action No. CA–579–72–A, Memorandum and Order dated September 15, 1981 at p. 3. The District Court also stated that its judgment of April 3, 1981 was intended as a final judgment and should have been so construed by the Government. It was a Rule 21, Fed.R.Civ.P. severance rather than a bifurcation under Rule 42(b). The District Court then issued its judgment to that effect on September 23, 1981. Thereafter, on October 27, 1981, the Government filed a Rule 60(b) motion with the District Court alleging a good faith belief that the April 3, 1981 order was not a final judgment, and therefore, not appealable as such. In its November 2, 1981 order, the District Court determined that a Rule 60(b) motion was not a substitute for a timely appeal and an attorney's misunderstanding of the law is not the type of mistake or excusable neglect contemplated by Rule 60(b). The Government then appealed the entire matter to the Fifth Circuit.

On July 11, 1983, the Fifth Circuit upheld the finality of the District Court's April 3, 1981 judgment holding against the Government. *United States v. O'Neil,* 709 F.2d 361 (5th Cir.1983) (*O'Neil* I) (Doko Farms, et al. were defendants in this action). The Circuit Court reasoned that there was a valid Rule 21 severance as opposed to a Rule 42(b) bifurcation. The Government, therefore, had 60 days to appeal from the April 3, 1981 judgment, which it failed to do. Thus, the District Court's judgment, denying the Government's claim against the O'Neil defendants became final. The Fifth Circuit did, however, reverse and remand that part of the District Court's decision which granted summary judgment to the defendants on their counterclaims. The Circuit Court ordered the District Court to review its jurisdiction to grant the relief requested by the defendants, and to look into any collateral estoppel effects its dismissal of the Government's claim would have on the O'Neil defendants. The Circuit Court reasoned that because the counterclaims were severed from the original action, they became separate actions requiring an independent jurisdictional basis for adjudication in the District Court.

Meanwhile, one month earlier, on June 9, 1983, the Fifth Circuit decided the companion *Batson* cases on appeal. *United States v. Batson,* 706 F.2d 657 (5th Cir.1983) (*Batson* I). In that decision, the Fifth Circuit reversed the District Court's summary judgment against the Government and remanded the cases for further consideration. The Circuit Court's decision found that the

Government's claim was not barred by the applicable statute of limitations nor were the regulations on which the Government claim was administratively established, unconstitutionally vague. However, due to the complexity of the matter and since there were several other defendant (farmers) defenses left undecided, the Circuit Court remanded the case for the District Court's further consideration, rather than holding outright for the Government. Nevertheless, *Batson* I clearly reinstated the Government's claim against the Batson defendants.

Thus, by the middle of July 1983, both the *Batson* line of cases and the *O'Neil* line of cases (including the plaintiff here—Doko Farms) were back with the District Court for appropriate disposition. The distinction now drawn between the two lines of cases, however, was that the Government's claim in the *Batson* line of cases was still alive and kicking, whereas in the *O'Neil* line of cases, the Government's claim was dead. The only matter left standing for the District Court to decide in the *O'Neil* cases was whether it had jurisdiction over the defendant's counterclaims and to decide the counterclaims if it did.

On remand in the *O'Neil* line of cases, the defendants amended their counterclaims which were then filed as amended complaints to assert jurisdiction as an independent action in the District Court under 28 U.S.C. § 1361 (the mandamus statute), pursuant to the suggestion of the Circuit Court. *See O'Neil* I, *supra,* 709 F.2d at 375. Thereafter, the defendants (including Doko Farms) filed again for summary judgment with the District Court. The Government then filed a counterclaim to the defendants' amended complaint, requesting judgment on the cotton subsidy overpayment to the defendants, and filed a cross-motion to dismiss for lack of jurisdiction. The Government's claim for overpayments of the cotton subsidies now asserted as a counterclaim was the exact same claim that had been decided against

the Government by the District Court and finalized in *O'Neil* I, *supra,* 709 F.2d at 375.

In support of its motion that the District Court now lacked jurisdiction over the O'Neil group's amended complaint, the Government asserted that the District Court had no jurisdiction to hear claims against the Government exceeding $10,000 under 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1491.[3] The District Court, however, on May 24, 1984, found that it had jurisdiction for three reasons: (1) the Government's claim had been extinguished and *res judicata* barred any relitigation; (2) the O'Neil group was not asking for money damages but only for release of moneys impounded based totally on that extinguished debt; and (3) that the O'Neil group was invoking the mandamus statute to force the Government to take their names off the Federal Debt Register which would automatically release the impounded funds. The District Court stated its reasoning on jurisdiction in the following way:

In the present action, this court has the discretion to exercise mandamus jurisdiction, and such exercise would serve judicial economy and be fair to all parties. The funds the plaintiffs seek to have released to them are undisputed in amount and are simply payments being withheld until the Government's claim against them is "judicially resolved." What plaintiffs essentially seek is the removal of their names from the debt register; release of the withheld funds is an automatic consequence of such action. This consequential release of funds, which the plaintiffs seek through their counterclaim, is not a typical action for damages. It is more analogous to an action for a declaration of rights; in this case, the right to a *particular* fund, already in existence. In a typical action for damages, the plaintiff is seeking money indemnification for the harm caused by the defendant; the harm is

---

**3.** Doko Farms asserts in its Claims Court action that some $580,000 is currently being withheld (impounded) from them by virtue of the Government's cotton overpayment claim, and

because their names appear on the Federal Debt Register as a result of that alleged debt owed by Doko Farms to the Government.

quantified and a sum of money is computed which will compensate the plaintiff. In this case, however, what plaintiff [sic] seeks is the impounded funds which are undisputed. It is the right to release that is being adjudicated here, and not the amount of the funds.

*Doko Farms v. United States,* 588 F.Supp. 867, 869 (N.D.Tex.1984). Further, the District Court concluded:

Here, there is no such pending action in the Court of Claims [sic] and jurisdiction in that forum would raise the same issue, *i.e.* is this suit in fact an action for "money damages" within the meaning of § 1346? Thus, it is unclear whether the plaintiff [sic] would have an adequate alternative remedy if jurisdiction in this court is declined. Secondly, there is no dispute as to the amount of funds withheld by the Government. Further, the plaintiffs have a clear right to the relief sought, and the Government has a clear duty to act. Due to a procedural mistake on the Government's part, its claim against the plaintiffs for any alleged overpayment is barred by limitations. Therefore the Government lacks any grounds for continuing to withhold the funds. The dispute between the Government and these three plaintiffs has been judicially and finally resolved.

Although the dispute has been resolved in favor of plaintiffs (the original defendants in the cases), they have been effectively denied any relief by the continuance of their names on the debt register and the refusal to allow benefits to which they would otherwise be entitled. Such a result is unjust and plaintiffs are to be given relief and placed in a position to which they are entitled because of the judgment in their favor.

Also, the final judgment denying relief to the Government is binding to all parties pursuant to the doctrine of res judicata—which doctrine forms a basis for judgment and order in these cases in favor of plaintiffs.

The action is ready for quick resolution, and no principles would be served by deferring to the Court of Claims [sic], but rather, court time and legal expense would be wasted.

*Doko Farms, supra,* 588 F.Supp. at 870. The District Court then granted the O'Neil group's motion for summary judgment, and denied the Government's motion to dismiss. Judgment was entered for the O'Neil group and against the Government on its (now) counterclaim. The Government again appealed this final judgment to the Fifth Circuit.

Three weeks later, on June 13, 1984, the District Court entered judgment *for* the Government in the *Batson* cases. *United States v. Batson,* 588 F.Supp. 871 (N.D. Tex.1984). The District Court found that the ASCS administrative determinations of debt owing to the Government for overpayments on cotton subsidy payments were entitled to finality since there had been no violations of due process of law. The Batson defendants appealed this final judgment to the Fifth Circuit.[4]

On July 29, 1985, the Fifth Circuit revisited the *O'Neil* cases (Doko Farms is a part of this group) and again reversed the District Court. *United States v. O'Neil,* 767 F.2d 1111 (5th Cir.1985) (*O'Neil* II). The Fifth Circuit based this reversal squarely on lack of jurisdiction. The Circuit Court found that:

For mandamus jurisdiction to exist, three elements must generally co-exist. "A plaintiff must show a clear right to the relief sought, a clear duty by the defendant to do the particular act, and that no other adequate remedy is available." [Citations omitted.] We find these elements are lacking here.

First, the O'Neils have not demonstrated a clear right to receive the disputed funds or a corresponding duty by the USDA to disburse these funds to them. The government may attempt to collect the alleged overpayments through ad-

**4.** On February 18, 1986, the Fifth Circuit affirmed the District Court's decision as to liability but again remanded the case to the District Court to determine the appropriate amount of interest due the Government. *United States v. Batson,* 782 F.2d 1307 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986) (*Batson* II).

ministrative channels, even though its right to sue in the courts is now foreclosed. [Citations omitted.] By this decision, we do not decide whether the USDA may collect these funds through administrative channels. We merely hold that the issue is sufficiently substantial to preclude mandamus of the O'Neil's claims.

Additionally, mandamus is improper because another remedy is available in the Court of Claims [sic]. Despite the O'Neils' protestations to the contrary, the Court of Claims [sic] can provide all the relief they seek. 28 U.S.C. § 1491(a)(2) states:

> To provide an entire remedy and to complete the relief afforded by the judgment, the [Court of Claims] [sic] may, as an incident of and collateral to any such judgment, issue orders directing ... correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

This section permits the Court of Claims [sic] to order the removal of the O'Neils' names from the Federal Debt Register and the restoration of their cotton allotments as an incident to providing complete relief on any money judgment rendered.

The Court of Claims [sic] has jurisdiction to award the O'Neils a judgment against the United States Treasury in excess of $10,000. 28 U.S.C. §§ 1346 and 1491. While mandamus jurisdiction may not always be precluded by rights granted by the Tucker Act, [citations omitted] this possibility does not obviate the need to satisfy the prerequisites for mandamus.

Because an adequate remedy exists in the Court of Claims [sic] in this case, mandamus is improper. Since no other

jurisdictional base was pleaded, we dismiss the O'Neils' claims for lack of jurisdiction, but grant them leave to refile their claims in the Court of Claims [sic] at their option. If the O'Neils so request, this court will transfer these causes to the Court of Claims [sic].

*O'Neil* II, *supra*, 767 F.2d at 1112–13.

Following the Fifth Circuit's decision in *O'Neil* II, *supra*, the Doko Farms Partnership exercised the option afforded by the Circuit Court of transferring their case to the United States Claims Court. On February 27, 1986, plaintiffs filed their Second Amended Original Complaint in this Court.[5] Here, plaintiffs seek mandamus against the Government: (1) directing the removal of plaintiffs from the Claims Control Record (also called the Federal Debt Register); (2) directing the release of all impounded funds withheld from plaintiffs, together with interest at six percent pursuant to 31 U.S.C. § 3728(c); and (3) directing defendants to return all cancelled cotton allotments and to remove any additional restrictions placed on plaintiffs.

The United States answered plaintiffs' complaint on April 28, 1986 and also counterclaimed to recover "a debt as determined by a final agency determination of liability." It should be noted that defendant's counterclaim is identical to its claim originally brought in the District Court. As noted above, the District Court ruled against the United States on both limitations and constitutional grounds; this ruling became final in favor of Doko Farms when the Government failed to take a timely appeal of the District Court's decision. *O'Neil* I, *supra*.

On August 4, 1986, Doko Farms filed a motion for summary judgment in this Court. Doko Farms contends that it is entitled to summary judgment because the take nothing judgment issued by the District Court on April 3, 1981 and affirmed in *O'Neil* I, *supra*, requires the Government to grant plaintiffs the relief they seek.

---

**5.** This is, in actuality, the first complaint filed by plaintiffs in the Claims Court. Their "First Amended Original Complaint" was filed in the

District Court after the Fifth Circuit reversed that portion of the District Court's September 1981 order granting their counterclaims.

Also, plaintiffs claim that the statute of limitations bars the Government from continuing to withhold funds, because an administrative offset is unavailable to claims that have been outstanding for more than ten years. In addition, they argue that the Government's counterclaim is barred by *res judicata* because a final judgment, affirmed by the Fifth Circuit, was rendered on that claim in *O'Neil I, supra.*

The defendant, in its cross-motion for summary judgment, argues that plaintiffs' indebtedness to the United States was conclusively established by a final determination issued by the ASCS. Further, the Government argues that the running of the statute of limitations does not extinguish the debt because administrative recoupment is still available even though access to judicial remedies may be foreclosed. The United States also claims that its counterclaim is not barred by *res judicata.*

### Discussion

Although the issue of the jurisdiction of this Court over the parties' claims has not been raised by either party, it is well settled that the Claims Court may evaluate its own jurisdiction at any time. *Berdick v. United States,* 222 Ct.Cl. 94, 612 F.2d 533 (1979); *Wheeler v. United States,* 3 Cl.Ct. 686, 689 (1983). As stated in *Berdick* "no amount of transferring from another court will create jurisdiction where none existed previously." *Berdick, supra,* 222 Ct.Cl. at 99, 612 F.2d at 536. Thus, the first issue to be determined is whether the plaintiffs' action falls within the jurisdiction of this Court. Specifically, it must be determined whether the true character of the plaintiffs' action is one for equitable relief (mandamus/declaratory judgment relief) which is clearly outside the Court's jurisdiction, or one for money damages which is clearly within this Court's jurisdiction.

■ The Tucker Act, 28 U.S.C. § 1491(a)(1) (1982), provides that this Court may "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied

contract with the United States * * *." This statute, however is jurisdictional only and does not in and of itself create any substantive rights enforceable against the Government. *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976); *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967). Therefore, for plaintiffs' claim to be cognizable in this Court, it must rest on a contract or relevant statute or regulation which can "fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. Mitchell,* 463 U.S. 206, 217, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983); *Testan, supra,* 424 U.S. at 400, 96 S.Ct. at 954; *Eastport S.S. Corp., supra,* 178 Ct.Cl. at 607, 372 F.2d at 1009. The plaintiffs have not identified in their pleadings or other documents before this Court any such money mandating statute, regulation or contract.

■ Although it is well settled that the Claims Court has some authority to grant affirmative, nonmonetary relief, this power is limited. Equitable relief can issue from this Court only if it is associated with and *subordinate* to a claim for money judgment. *See Austin v. United States,* 206 Ct.Cl. 719, 723, *cert. denied,* 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975). Therefore, the plaintiffs' *primary claim* must seek monetary relief before this Court can exercise jurisdiction. *See United States v. Testan, supra; United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *McEniry v. United States,* 7 Cl.Ct. 622, 625, *aff'd,* 785 F.2d 323 (Fed.Cir.1985).

In their Second Amended Original Complaint filed in this Court, Doko Farms states the following:

Plaintiffs would show that in conjunction with the action filed by the United States of America in said Civil Action No. 5–79–072 in the United States of America [sic] took certain actions affecting the plaintiffs here, namely:

(1) The names of plaintiffs were placed on the Federal Debt Register which action limits, if not eliminates, participation by these plaintiffs in any government

program including, but not limited to, the Agriculture Program.

(2) The government defendants have withheld other program payments belonging to plaintiffs, and

(3) The government defendants have cancelled cotton allotments which plaintiffs purchased as permanent cotton allotments for their land which action affects the rights of plaintiffs to participate in certain other aspects of the cotton program.

As stated above, the plaintiffs here, as defendants in said Civil Action No. 5–79–072 obtained a judgment that the United States of America take nothing against them and such judgment has now become final on appeal and therefore there is no legal basis for the actions taken by the United States as set forth above and *plaintiffs are entitled to mandamus against defendants* (1) *directing defendants to remove* the name of plaintiffs from the Federal Debt Register; (2) *directing defendants to release* to plaintiffs all payments previously withheld from plaintiffs, together with interest on such amounts at the rate of 6% from the time the money was withheld pursuant to 31 U.S.C. § 3728(c); and (3) *directing defendants to return* any cancelled cotton allotments to plaintiffs and directing that any additional restrictions placed upon these plaintiffs be removed.[6] [Emphasis added.]

Plaintiff's Second Amended Original Complaint at pp. 3–4.

The Complaint went on to state:

Plaintiffs would show that *they have a clear right to the mandamus relief sought;* that defendant has a clear duty to remove the names of the plaintiffs from the Federal Debt Register, to release to plaintiffs all payments withheld from plaintiffs together with interest on such amounts at the rate of 6% per annum, and to return any cancelled allotments to plaintiffs and remove any additional restrictions placed upon plaintiffs;

*and that no other adequate remedy is available to plaintiffs to secure the relief here sought.* [Emphasis supplied.]

By virtue of the final judgment in favor of Doko Farms, et al, defendants in Cause No. 5–79–072, it is established as a matter of law there there is no debt owing by Doko Farms, et al, to the United States and, therefore, as a matter of law, the provisions of *Part 13 of Title 7, C.F.R.,* have no applicability. Since there is no debt owing by Doko Farms, et al, to defendants, there is no basis for the acts of defendants described above, as a matter of law. Defendants have no discretion or right to withhold other program payments owing to plaintiffs, defendants have the duty to remove the names of plaintiffs from the Federal Debt Register, to release to plaintiffs all payments withheld from plaintiffs, together with interest on such amounts at the rate of 6% per annum, and to return any cancelled allotments to plaintiffs and to remove any restrictions placed upon plaintiffs, all as a matter of law. [Emphasis in original.]

Plaintiffs' Second Amended Original Complaint at pp. 5–6.

The Complaint finally concluded with its prayer for relief:

WHEREFORE, PREMISES CONSIDERED, plaintiffs pray that this Court *render judgment directing defendant to remove* plaintiffs' names from the Federal Debt Register; that this Court *render judgment directing defendant to release* all payments owing to plaintiffs and withheld by defendants, with interest at the rate of 6% from the date that such claims were withheld from plaintiffs; and *for such other and further relief to which plaintiffs may show themselves justly entitled.* [Emphasis supplied.]

Plaintiffs' Second Amended Original Complaint at p. 7.

---

**6.** At oral hearing on the parties' cross-motions before this Court conducted on July 30, 1987, Doko Farms orally moved to amend their Complaint to eliminate their request for the return of any cotton allotments, since the cotton allotment program in the United States has expired by law. The Government had no objection to this oral motion and the motion was allowed.

## I.

There are basically two reasons why this Court does not have jurisdiction over this matter. First and foremost is that the fundamental nature of this claim remains what it was when initially filed in the District Court in 1979. That is, the claim in 1979 was (and remains) a *Government claim* against private parties. Under 28 U.S.C. § 1345, the District Court has original and exclusive jurisdiction over all civil claims commenced by the Government against private parties. Although the Government's claim has undergone several metamorphoses along the tortured path to this Court, it remains today the same claim it always was—nothing more, nothing less.

The Government sued in the District Court in 1979 for overpayments paid to Doko Farms and other farming entities in connection with the Government's cotton subsidy support program. Four of the defendants in the District Court action, including the plaintiffs here (Doko Farms), filed answers which included counterclaims. Basically, Doko Farms and the other four defendant groups (the O'Neil group of defendants) contended in the District Court action that the debt was invalid because the statute of limitations had run, the regulations under which the debt was administratively established were unconstitutionally vague, and that the administrative process had denied them due process of law. Based on these affirmative defenses to the Government's claim for cotton subsidy overpayments, the four defendants counterclaimed to have the District Court direct the Government to: (1) remove their names from the Federal Debt Register; (2) direct the release of impounded money due them from their participation in other agricultural subsidy programs; and (3) direct the return of all cancelled cotton allotments. The theory of the four O'Neil defendants was that if the District Court found that the Government's underlying claim was invalid, the District Court should order complete relief and place the defendants back in the position they were in prior to the Government asserting its claim against them. In sum, the four O'Neil defendants believed that their affirmative defenses and counterclaims were nothing but the flip side of the same coin, the coin being the Government claim against them. Doko Farms and the others that had counterclaimed, were asserting no affirmative private party claim against the Government which could arguably trigger 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1491. They were merely asking for the Government's claim to be declared invalid and for the right to continue to participate in the Government's cotton support program. Doko Farm's answer and counterclaim, properly analyzed, was but an affirmative defense and not an affirmative private party claim against the Government.

There were, perhaps, some minor errors in judgment made along the way. Looking back, this Court is sure that Doko Farms would have preferred not to have counterclaimed at all, but simply relied on their affirmative defenses, or, perhaps, the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. Also, undoubtedly the District Court, if it could do things over, would not again sever the "counterclaims" from the Government's main claim. Nevertheless, the District Court recovered from its minor error and saw the action for what it was, *i.e.,* a Government claim in which the defendants were merely asking to have the "alleged" debt adjudicated and finally resolved. The District Court was correct when it found that the Government's claim was *res judicata,* had been extinguished, and that the defendants (Doko Farms) were entitled to the declaratory relief they had requested.[7] *See Doko Farms v. United States, supra,* 588 F.Supp. at 869.

Conversely, and with all due respect, the Fifth Circuit was in error when it reversed the District Court for lack of jurisdiction and suggested transfer of the matter to the

---

**7.** If it were to be determined that this Court does have jurisdiction over this matter, perhaps it would be helpful to point out that this Court would decide this case exactly as the District Court did in *Doko Farms v. United States,* 588 F.Supp. 867 (1984). The doctrine of *res judicata* would be applied, the private party debt would be extinguished, and the plaintiffs would be given the declaratory relief that they have prayed for in their complaint.

Claims Court. *O'Neil* II, *supra*, 767 F.2d at 1113. Before this Court, the case remains the same. The Government is again asserting its cotton support overpayment claim against Doko Farms, this time as a counterclaim. Doko Farms, in their complaint, is asserting that the Government's claim is *res judicata* and the debt is extinguished. Because of that extinguished debt, Doko Farms asserts that they are entitled to have their names removed from the Federal Debt Register which will automatically release the impounded funds. A private party does not get placed on the Federal Debt Register unless the Government believes that the private party owes it money. When the Government seeks to enforce that debt (by filing a civil claim in a District Court), it is asserting a Government claim. Merely defending against a Government claim and seeking to be placed back in a status quo position is not the assertion of an affirmative private party claim against the Government. It does not trigger the Tucker Act. *See* 28 U.S.C. §§ 1346(a)(2), 1491.[8]

In short, this Court has no jurisdiction over this claim. The claim remains what it has always been—*i.e.*, a claim by the United States Government against a private party, which must be brought and concluded in the District Court pursuant to 28 U.S.C. § 1345. The District Court has original and exclusive jurisdiction over this Government claim based on 28 U.S.C. § 1345 and 28 U.S.C. §§ 2201, 2202.[9]

## II.

Even if this case was conceptually held to be a private party claim against the Government, this Court would still not have jurisdiction over this case because of the nature of the relief demanded. The plaintiffs here are not asking for a money judgment as their primary claim or goal. The plaintiffs here are asking for an order which would declare the Government's claim barred by *res judicata* and extinguish their alleged debt to the Government. Further, the plaintiffs want an order pursuant to 28 U.S.C. § 1361, the mandamus statute, which would direct the appropriate Government officials to remove their names from the Federal Debt Register, to return certain cotton allotments that were cancelled, and to release certain impounded funds that were earned by the plaintiffs on other agricultural support programs. Thus, the relief the plaintiffs are requesting in this Court is primarily equitable in nature. Although they have not cited to the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202, that is the type of relief sought. Similarly, the plaintiffs do cite to the mandamus statute, 28 U.S.C. § 1361, and this also is the type of relief they seek. Both types of relief are unavailable in this Court.

The Claims Court, created under Article I, rather than Article III of the United States Constitution, is not a District Court within the scope of 28 U.S.C. § 1361.

---

8. This case represents another manifestation of the problems associated with civil claims being filed for and against the Government. Claims filed against private parties by the Government must be filed in the District Court pursuant to 28 U.S.C. § 1345. However, Tucker Act claims against the Government for money judgment over $10,000 must be filed in the Claims Court pursuant to 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1491. Jurisdictional problems arise when counterclaims are filed in either case, or where the parties are requesting equitable relief along with a demand for money. *See, e.g., Smith v. United States*, 8 Cl.Ct. 69 (1985), *aff'd*, 823 F.2d 532 (Fed.Cir.1987). This continuing problem could be eliminated through legislation by allowing the Claims Court to have general equitable powers to deal with all matters that are currently within its subject matter jurisdiction, and conversely by eliminating the $10,000 and under jurisdictional limit for the District Court in Tucker Act cases. Then, either court would be in a position to grant full and complete relief, without the jurisdictional problems associated with these cases. Although the background of this case would make for a marvelous "Federal civil procedure" law school exam (or bar exam) question, this Court believes that a reexamination and clarification of this area by Congress would be helpful.

9. This is not a Government claim within the ambit of the Contract Disputes Act, 41 U.S.C. § 601, *et seq*. The Claims Court has jurisdiction over Government claims arising under that Act by virtue of the requirement for a prior decision by a contracting officer and the *contractor's* right to appeal such a decision directly to the Claims Court. 41 U.S.C. §§ 605(a), 609(a)(1).

**60**

Therefore, this Court is without jurisdiction to issue an order of mandamus. *Alford v. United States*, 3 Cl.Ct. 229, 230 (1983). *Accord Smith v. United States*, 228 Ct.Cl. 168, 173, 654 F.2d 50, 53 (1981) ("Mandamus * * * the district court has that power; we do not."); *Smith v. United States*, 8 Cl.Ct. 69, 70–71 (1985). *See also Jesko v. United States*, 3 Cl.Ct. 730 (1983).

■ Likewise, the Court is not empowered to grant declaratory relief pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202. *United States v. Testan*, *supra*, 424 U.S. at 397–98, 96 S.Ct. at 952–53; *United States v. King, supra; Smith v. United States, supra*, 8 Cl.Ct. at 70–71; *Alford v. United States, supra*, 3 Cl.Ct. at 230.

Even if the Court disregarded the "label" selected by plaintiffs to characterize the relief sought, they fare no better. Plaintiffs, in substance, seek judicial intervention in securing the removal of their names from the Claims Control Record. If such action is undertaken, the release of the funds currently withheld would occur automatically. In this instance, the release of funds would be incidental and subordinate to a declaration of plaintiffs' rights. This Court only has jurisdiction over the reverse situation. Plaintiffs' action is not primarily one for "money judgment," and as a result, it is not cognizable in the Claims Court. In substance and in form, the plaintiffs seek mandamus or declaratory relief which this Court is not empowered to grant. The mere fact that the equitable relief demanded has a monetary aspect to it does not deprive the District Court of jurisdiction. *See O'Neil* II, *supra*, 767 F.2d at 1113. As a result, the determination of whether plaintiffs are in fact entitled to any judicial relief properly rests with the District Court.

■ Because the Court finds that there is a want of jurisdiction over the plaintiffs' action, and believes that it would be in the interest of justice to do so, this case will be transferred to the District Court for the Northern District of Texas pursuant to the authority contained in 28 U.S.C. § 1631. Clearly, if this Court has no jurisdiction over the matters requested in the plaintiffs' complaint, it has no jurisdiction over the Government's counterclaim. *Somali Development Bank v. United States*, 205 Ct.Cl. 741, 752, 508 F.2d 817, 822 (1974). Thus, the entire case will be transferred to the District Court for the Northern District of Texas.

## CONCLUSION

For the reasons discussed above, the parties' cross-motions for summary judgment are denied, and this case is to be transferred to the United States District Court for the Northern District of Texas. The Clerk is directed to enter judgment accordingly. Each party is to bear its own costs.