DOKO FARMS, Partnership, and James Porter, Allison V. Barnett, L.D. Smith, William T. Curry

v.

The UNITED STATES.

No. 744–88C.

United States Claims Court.

Oct. 30, 1990.

Albert B. Krachman, Washington, D.C., atty. of record, for plaintiff.

Judith Rabinowitz, Washington, D.C., with whom was Asst. Atty. Gen., Stuart M. Gerson, for defendant.

## OPINION

YOCK, Judge.

This case is again before the Court on cross-motions for summary judgment following this Court's transfer of the case to the District Court for the Northern District of Texas, a decision and judgment by that district court, and a subsequent appeal to the United States Court of Appeals for the Federal Circuit from that district court decision. On appeal, the Federal Circuit vacated the judgment of the district court and remanded with instructions to transfer the case to the United States Claims Court. For the reasons stated herein, the plaintiff's motion for summary judgment is granted, and the defendant's cross-motion is denied.

### Factual and Procedural Background

After a span of almost eleven years, which has resulted in four decisions of the District Court for the Northern District of Texas, one previous decision by this Court, two decisions of the Court of Appeals for the Fifth Circuit, and one by the United States Court of Appeals for the Federal Circuit, another complete recitation of the facts would be unnecessarily cumulative. Therefore, only those facts and procedural aspects necessary to this decision are set forth.[1]

The plaintiffs (Doko Farms) participated in the Upland Cotton Price Support Program sponsored by the United States Department of Agriculture (USDA), 7 U.S.C. § 1444(e) (1988), and received support payments starting in July 1973 from the Commodity Credit Corporation, an agency within the USDA, for their participation in the program. In 1979, the Government instituted suit (a Government claim for money) against Doko Farms and seven others in the United States District Court for the Northern District of Texas to recover excessive payments, after it was determined by a USDA hearing officer, utilizing the administrative procedures as established in the program regulations, that these defendants had violated the program requirements. Doko Farms filed a counterclaim against the Government to remove their names from the Federal Debt Register,[2] return all cancelled cotton allotments,[3] and release the impounded money due them from their participation in other agricultural subsidy/support programs.

Following a two-day hearing on the parties' cross-motions for summary judgment, the district court concluded that the Government's suit was barred by the statute of limitations and that the regulation, which was the basis for the USDA determination against Doko Farms, was unconstitutionally vague and overbroad. *United States v. Doko Farms*, No. CA-5-79-72, Memorandum and Order (N.D.Tex. Apr. 3, 1981). Based on these two conclusions, the district court entered judgment on April 3, 1981, for Doko Farms, ordering that the Government "take nothing of and from each defendant [Doko Farms]," and dismissed the Government's complaint with prejudice. *United States v. Doko Farms*, No. CA-5-79-72, Judgment (N.D.Tex. Apr. 3, 1981). The judgment further stated that "[t]he defendants' [Doko Farms'] counterclaim against the plaintiff [the Government] is severed from the cause of action alleged by plaintiff and will be tried separately and at a later date." *Id.* Thereafter, the Government did not appeal the "take nothing" judgment, and Doko Farms then moved for summary judgment on their severed counterclaim.

Once again, the district court entered judgment for Doko Farms, reasoning that:

---

1. A thorough explanation of the entire factual chronology is set forth in *United States v. O'Neil*, 709 F.2d 361 (5th Cir.1983), *United States v. Batson*, 706 F.2d 657 (5th Cir.1983), and *Doko Farms v. United States*, 13 Cl.Ct. 48 (1987).

2. The Federal Debt Register, also known as the Claims Control Record, lists all those whom the Government reasonably believes owe it money. Placement on the register does not preclude

program participation, but the Government may withhold payment to the debtor up to the disputed amount until the question of liability for the debt is resolved.

3. Cotton allotments represented entitlements to subsidy payments in price support programs in existence during the 1970's; however, the cotton allotment program has since been terminated.

It appears that the listing in the Claims Control Record as well as the withholding of due payments were related to the main cause of action * * *. Since the court found the defendants [Doko Farms] were not liable for the alleged overpayments, there appears to be no legal basis for the retention of monies due defendants. No issue exists as to any material fact and therefore the defendants are entitled to summary judgment as a matter of law.

*United States v. Doko Farms*, No. CA–5–79–72–A, Memorandum and Order at 3 (N.D.Tex. Sept. 15, 1981). Having entered judgment for Doko Farms in the Government's initial action against Doko Farms for money judgment, which was not timely appealed, and having also granted judgment for Doko Farms on their counterclaim, the district court ordered:

[T]hat [the Government] remove the names of * * * Doko Farms, James Porter, Allison V. Barnett, L.D. Smith and William T. Curry) from the Claims Control Record, and * * * release to each and every [one of them] any and all sums due them, collectively or individually, that have been withheld as a result of this lawsuit * * *.

*United States v. Doko Farms*, No. CA–5–79–72–A, Judgment (N.D.Tex. Sept. 23, 1981).

On the Government's appeal of the second final judgment of the district court on the counterclaim, the Fifth Circuit "affirm[ed] the district court in the government's suits against [Doko Farms]," *United States v. O'Neil*, 709 F.2d 361, 375 (5th Cir.1983), and reversed and remanded the case to the district court for further proceedings to establish jurisdiction over the counterclaims, which were now an independent action by virtue of the severance.

On remand, the district court found it had jurisdiction to grant the relief sought in the counterclaim pursuant to the mandamus statute, 28 U.S.C. § 1361 (1988). *Doko Farms v. United States*, 588 F.Supp. 867, 869 (N.D.Tex.1984). In further explanation of why it had jurisdiction and the United States Claims Court did not, as urged by the Government, the district court pointed out that Doko Farms was seeking:

the removal of their names from the debt register; release of the withheld funds is an automatic consequence of such action. This consequential release of funds, which [Doko Farms] seek[s] through their counterclaim, is not a typical action for damages [within the meaning of 28 U.S.C. § 1346(a)(2)]. It is more analogous to an action for a declaration of rights; in this case, the right to a *particular* fund, already in existence.

*Id.* (emphasis in original).

The district court reiterated its finding that the Government's claim for money judgment against Doko Farms for any alleged overpayment was barred by the statute of limitations, and

Therefore the Government lacks any grounds for continuing to withhold the funds. The dispute between the Government and [Doko Farms] has been judicially and finally resolved.

*Id.* at 870.

Subsequent to this third order of the district court, the Government again appealed to the Fifth Circuit. At this second review of the cause of action, the Fifth Circuit held that jurisdiction over the counterclaim "rest[ed] exclusively with the Court of Claims [sic]," and "grant[ed Doko Farms] leave to refile their claims in the Court of Claims [sic] at their option." *United States v. O'Neil*, 767 F.2d 1111, 1113 (5th Cir.1985). Doko Farms thereafter exercised this option and filed their complaint in the United States Claims Court on February 27, 1986, seeking the same relief as sought in the original counterclaim filed in the district court in 1979, *i.e.*, removal of their names from the debt register, return of cancelled cotton allotments, and release of impounded funds.

In response to Doko Farms' complaint in this Court, the Government filed its answer and counterclaim. The Government's counterclaim here asserted the same identical claims that were alleged in the original suit filed by the Government against Doko Farms for money judgment in the district

court, which was dismissed by that court in its first judgment with prejudice and which was affirmed by the Fifth Circuit. Although both parties moved for summary judgment on the merits, this Court, on its own motion, held that the grant of jurisdiction to the Claims Court by the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988), did not include authority over Government claims for money against private parties. *Doko Farms v. United States*, 13 Cl.Ct. 48, 59–60 (1987). As this Court explained, the cause of action originated as a Government claim against private parties (Doko Farms) for money, and Doko Farms' counterclaim was only an affirmative defense and not an affirmative private party claim against the Government for money. Thus, the claim before this Court at that point was the same as it had always been—a claim by the Government against private parties for money. Pursuant to 28 U.S.C. § 1345 (1988), the district courts have original and exclusive jurisdiction over claims for money by the Government against private parties. Furthermore, this Court pointed out that jurisdiction was lacking because of the equitable relief sought by Doko Farms. The United States Claims Court does not possess jurisdiction to issue an order of mandamus nor does it possess the power to grant declaratory relief. Therefore, the action was transferred back to the District Court for the Northern District of Texas, where it originated. *Doko Farms*, 13 Cl.Ct. at 60.

The district court, for the fourth time, granted judgment to Doko Farms and denied the Government's motion for summary judgment on its counterclaim. *Doko Farms v. United States*, No. CA–5–79–072–A, Judgment at 2 (N.D.Tex. Jan. 11, 1988). In addition, the district court ordered that the plaintiffs' names be removed from the Federal Debt Register and that all sums be paid that were owed to them and withheld because they were listed on the register. *Id.*

Once again, the Government appealed, this time to the United States Court of Appeals for the Federal Circuit, urging that jurisdiction was not proper in the district court, but rather in the Claims Court. Using an analysis based on the law-of-the-case doctrine and the decision in *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), the Federal Circuit held that the Fifth Circuit's conclusion that "jurisdiction of the * * * claims rests exclusively with the Court of Claims [sic]," *United States v. O'Neil*, 767 F.2d at 1111, was the law of the case on the jurisdictional issue. *Doko Farms v. United States*, 861 F.2d 255, 256 (Fed.Cir.1988). Therefore, the Federal Circuit determined that "[j]urisdictional ping pong can be ended only by strict adherence to law-of-the-case principles which here require[s] retransfer to the Claims Court." *Id.* at 257 (footnote omitted).

Doko Farms subsequently filed its Third Amended Complaint on January 18, 1989, in the United States Claims Court, again seeking the removal of their names from the Federal Debt Register and the release of the payments owing to the plaintiffs and withheld by the Government, together with interest and attorneys' fees.[4] Just as before, the Government filed its answer and counterclaim, asserting the same affirmative claims that were previously alleged by the Government in its initial action filed against Doko Farms in the district court in 1979, and which was dismissed by that court, with prejudice (and affirmed by the Fifth Circuit).

Doko Farms has now moved for summary judgment in this action, asserting that the Government's counterclaim is foreclosed by *res judicata* and that no legally enforceable reason exists for the Government to continue the retention of Doko's funds since the underlying liability was extinguished by the district court's "take nothing" judgment, which was never timely appealed and thus became a final judgment. In response, the Government filed its cross-motion for summary judgment, alleging that the agency's administrative

---

**4.** At this point, the request for the return of all cancelled cotton allotments was dropped since the cotton allotment program had expired.

determination, finding Doko Farms liable to the Government for payments received during its participation in the cotton price support program, remains in force despite the dismissal of the action by the district court.

Specifically, the Government argues that a dismissal based on the statute of limitations bars only a judicial remedy on the claim and does not absolve the wrongdoer or administratively extinguish the debt. Furthermore, according to the Government, the statute of limitations, which it concedes barred its original suit, has no impact on its counterclaim action pursuant to 28 U.S.C. § 2415(f) (1988), and therefore, the Government is entitled to recover the debt, as determined by the Deputy Administrator within the USDA, through an administrative remedy.

*Discussion*

## I. *Jurisdiction*

When this action was previously before this Court, the issue of jurisdiction was discussed by the Court at length before concluding that the claim was, in reality, a claim of and by the Government against private parties, and not a claim against the United States, and that the relief sought was primarily equitable in nature. *See Doko Farms*, 13 Cl.Ct. at 59. The initial claim filed in the district court was a Government claim against private parties for money, and although that claim experienced several metamorphoses along the tortuous procedural path to the Claims Court, the claim remained the same—the United States was still attempting to collect money from Doko Farms. Furthermore, Doko Farms was not seeking a money judgment, but rather an order directing the removal of their names from the Federal Debt Register, the return of cotton allotments, and the release of impounded funds.

Pursuant to the Tucker Act, 28 U.S.C. § 1491, the jurisdiction granted to the Claims Court encompasses "any claim against the United States," that rests on a contract, statute, or regulation, which can "fairly be interpreted as mandating compensation by the Federal Government for

the damage sustained." *United States v. Mitchell*, 463 U.S. 206, 217, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983). The parameters of this jurisdictional grant do not, however, extend to such a limit as to award declaratory or equitable relief in claims against private parties. Therefore, since the counterclaim of Doko Farms was merely the flip side of the Government's original claim and not an affirmative claim against the United States seeking a money judgment, this Court ruled that jurisdiction was not properly in the Claims Court.

Although the district court for the Northern District of Texas agreed that jurisdiction over the action was clearly confined to the district court, *see Doko Farms*, 588 F.Supp. at 869, the Federal Circuit ruled that the Fifth Circuit's decision to the contrary, *i.e.*, that the district court did not have jurisdiction, must be followed as the law of the case. *Doko Farms*, 861 F.2d at 256. In reaching this decision, the Federal Circuit relied on the Supreme Court's decision in *Christianson*, decided in 1988, which held that the Federal Circuit erred in deciding to reach the merits "in the interest of justice," once it concluded that it lacked jurisdiction. *Christianson*, 486 U.S. at 818, 108 S.Ct. at 2178.

The game of jurisdictional ping pong that occurred in *Christianson* started in the Federal Circuit when the respondent, Colt Industries, appealed the district court's decision granting summary judgment to Christianson. After concluding it lacked jurisdiction, the Federal Circuit transferred the appeal to the Seventh Circuit, which, on its own motion, concluded that the Federal Circuit was "clearly wrong," and transferred the case back to the Federal Circuit. *Id.* at 806, 108 S.Ct. at 2172.

On retransfer, the Federal Circuit adhered to its prior ruling, concluding that the Seventh Circuit "misunderst[ood] * * *" the * * * jurisdiction granted this court," and was "clearly wrong." *Id.* at 807, 108 S.Ct. at 2172. Nevertheless, the Federal Circuit proceeded to address the merits "in the interest of justice" and reversed the district court's decision. *Id.*

On appeal to the Supreme Court, the Federal Circuit's decision was vacated, and the case was remanded back again to the Seventh Circuit since, according to the Supreme Court, the statute conferring jurisdiction on the Federal Circuit authorized it to make only a single decision upon concluding it lacked jurisdiction—dismiss the case or transfer it to a court that had jurisdiction. *Id.* at 818, 108 S.Ct. at 2178. That single decision did not, however, include the option to extend jurisdiction to itself and decide the merits of the case where none existed, even in the interest of justice. *Id.*

The Supreme Court elaborated on the exasperation experienced by the litigants when they are bandied back and forth helplessly between two courts, each of which insists that the other has jurisdiction. To circumvent what may potentially culminate in a perpetual game of jurisdictional ping pong, the Supreme Court mandated that:

> The courts of appeals should * * * adher[e] strictly to principles of law of the case. Situations might arise, of course, in which the transferee court considers the transfer "clearly erroneous." But as "[t]he doctrine of the law of the case is ... a heavy deterrent to vacillation on arguable issues," such reversals should necessarily be exceptional; courts will rarely transfer cases over which they have clear jurisdiction, and close questions, by definition, never have clearly correct answers. Under law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end. ("The law of the case will be disregarded only when the court has 'a clear conviction of error' "). While adherence to the law of the case will not shield an incorrect jurisdictional decision should this Court choose to grant review, it will obviate the necessity for us to resolve every marginal jurisdictional dispute.

*Id.* at 819, 108 S.Ct. at 2179 (citations omitted).

Since the Federal Circuit, in transferring the *Christianson* case to the Seventh Circuit, was the first to decide the jurisdictional issue, the Supreme Court found that the law of the case was that the Seventh Circuit had jurisdiction and should have kept it. Therefore, the Federal Circuit was obliged to decline jurisdiction on retransfer rather than exert jurisdiction when none existed. *Id.* at 817, 108 S.Ct. at 2178. The Federal Circuit was admonished by the Supreme Court to abide by the law-of-the-case doctrine, which, in *Christianson*, established that the Seventh Circuit had jurisdiction and not the Federal Circuit. *Id.*

When the Doko game of jurisdictional ping pong reached the Federal Circuit, following the Supreme Court's ruling in *Christianson*, strict adherence to the law-of-the-case doctrine prevailed. Although Doko Farms urged that the law of the case, *i.e.*, the Fifth Circuit's decision that jurisdiction rested exclusively with the Claims Court, was "clearly erroneous," the Federal Circuit found this decision "plausible," and thus put an end to any further jurisdictional inquiry. *Doko Farms*, 861 F.2d at 256–57.

Not only did the Federal Circuit strictly apply the *Christianson* decision in Doko Farms, but it also found that:

> The situation here [in Doko] is closely parallel to that in *Christianson* where a retransfer was ordered. Jurisdictional ping pong can be ended only by strict adherence to law-of-the-case principles which here require retransfer to the Claims Court.

*Id.* at 257 (footnote omitted). Thus, despite this Court's original holding that jurisdiction properly lies with the district court and this Court's belief that the retransfer is clearly erroneous, it has been judicially determined that this Court is the proper court to end the game of ping pong. *Id.*

In view of the Federal Circuit's determination that the issue of jurisdiction has been decided by the Fifth Circuit, this Court now assumes jurisdiction over Doko Farms' pending complaint and moves to a discussion of the merits of this controver-

sy.[5] As previously discussed, the plaintiff's complaint before this Court is Doko Farms' original counterclaim that was severed by the district court, seeking the removal of their names from the debt register and the release of all previously withheld funds.[6]

## II. *The Applicability of Res Judicata to the Government's Counterclaim*

Doko Farms contends that the Government's current counterclaim is barred by *res judicata* because the district court entered judgment in their favor and against the Government in 1981, ordering the Government to take nothing of and from Doko and dismissing the Government's claim with prejudice. It is Doko's argument that the Government's original suit against them, which was dismissed, is the same exact claim that the Government is asserting now in its counterclaim. Furthermore, Doko asserts that the Fifth Circuit's affirmance of the district court's "take nothing" judgment absolutely bars the Government from relitigating the same claim again, which is now being presented in the form of a counterclaim.

In response to this challenge of *res judicata,* the Government maintains that it is not attempting to resurrect its original claim, and on the contrary, accepts the district court's 1981 judgment as final. Rather, it is the Government's position that, here, Doko filed the second action, giving rise to a new statute of limitations, 28 U.S.C. § 2415(f), and giving the United States a recovery that was previously unavailable, *i.e.,* a counterclaim asserted pursuant to 28 U.S.C. §§ 1503, 2508 (1988). Therefore, according to the Government, its counterclaim is significantly different than its original claim.

Not only does the Government assert that the present claim is not the same cause of action as previously instituted and dismissed, but it also contends that the parties have assumed different positions, *i.e.,* Doko Farms is now the plaintiff and was previously the defendant, which precludes applying the principles of *res judicata.*

The doctrine of *res judicata* provides that:

> [W]hen a final judgment has been entered on the merits of a case, "[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1877). The final "judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever." *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).

*Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983).

This principle is, likewise, recognized by every court that has issued a ruling in this case. *See Epic Metals Corp. v. H.H. Robertson Co.,* 870 F.2d 1574, 1576 (Fed.Cir.) (applied doctrine of *res judicata* as stated by Supreme Court in *Nevada* to bar subsequent litigation of patent validity), *cert. denied,* —— U.S. ——, 110 S.Ct. 160, 107 L.Ed.2d 117 (1989); *Dillard v. Security Pac. Brokers, Inc.,* 835 F.2d 607, 608 (5th Cir.1988) (applicable test of *res judicata* so as to bar a party's claim is: parties must be identical in both suits, prior judgment must have been rendered by court of competent jurisdiction, there must have been a

---

**5.** This Court currently shares the same concern as expressed by the Federal Circuit when it exercised jurisdiction in *Christianson:*

"Recognizing the delay already experienced, we see no reason that would justify further delay. *Notwithstanding a strong sense of discomfort occasioned by our view of our jurisdiction,* * * * we have determined that a rule of necessity and the interest of justice due the parties compel us

to resolve the questions presented on the merits of the judgment * * *." *Christianson v. Colt Indus. Operating Corp.,* 822 F.2d 1544, 1560 (Fed.Cir.1987) (emphasis added).

**6.** In the current complaint before this Court, the plaintiff's request for return of cotton allotments has been dropped. *See* note 4.

final judgment on the merits, and the same cause of action must be involved in both cases); *Reidt v. United States*, 13 Cl.Ct. 741, 744 (1987) (*res judicata* provides that a final decision on the merits bars a subsequent action between the same parties on that claim or any part thereof).

Thus, in order for Doko Farms to succeed on its argument that *res judicata* bars the Government's counterclaim, they must establish that a final judgment was entered on the merits, the cause of action asserted in the Government's counterclaim is the same cause of action that was previously asserted, and the parties in the instant proceeding are identical to or in privity with the parties in the earlier suit.

### A. Final Judgment on the Merits

It is Doko's position here that the judgment of the district court in 1981, granting their motion for summary judgment, is a final judgment on the merits. Therefore, Doko argues that any debt or liability it owed to the Government was extinguished and cannot now be relitigated under the guise of a counterclaim.

The Government's reply to this assertion is that a judgment dismissing an action by virtue of an expired statute of limitations does not destroy its cause of action against Doko for the debt, as administratively determined, but rather only destroys its remedy to collect the debt by filing a subsequent action in court. Thus, the Government believes that the legal obligation of Doko for the overpayments remains in effect and that it may collect this obligation by other means, which it has implemented by way of administrative offset.

It appears that both Doko Farms and the Government agree that the first judgment of the district court in 1981 was, in fact, a final judgment. The disagreement, however, arises over "what" the final judgment dismissed—was it a final judgment on the merits, thus extinguishing the Government's claim, or was it a final judgment that only precluded pursuing a judicial remedy, thus preserving the Government's underlying claim?

In order to answer this question, a close examination of the district court's Memorandum and Order that accompanied its final judgment is a necessary starting point to glean the intent of the judgment. As specifically stated in the court's Memorandum:

> Although Defendants [Doko Farms] raise several points in their motions for dismissal and alternatively for summary judgment, the Court will focus on the issues of limitations and the constitutionality of the regulation in question as they are dispositive of the matters in this case.

*United States v. Doko Farms*, No. CA–5–79–72, Memorandum and Order at 3. Thereafter, the district court discussed the applicable statute of limitations and concluded that the Government's suit was time barred.

■ Although the Government persistently contends that a judgment based on the statute of limitations does not extend to the merits, the precedents of the Fifth Circuit dictate the contrary. That Circuit has repeatedly held that "[a] ruling based on the statute of limitations is a decision on the merits for *res judicata* purposes." *Mathis v. Laird*, 457 F.2d 926, 927 (5th Cir.) (per curiam), *cert. denied*, 409 U.S. 871, 93 S.Ct. 201, 34 L.Ed.2d 122 (1972). In *Mathis*, the United States Court of Claims dismissed the plaintiff's claim as time barred, and the plaintiff thereafter filed in the United States District Court for the Middle District of Florida. The district court found the action barred by *res judicata*, and the Fifth Circuit subsequently affirmed that holding. *Mathis*, 457 F.2d at 927.

In an elaboration of the meaning of "on the merits," the Fifth Circuit distinguished dismissals based on limitations from those based on lack of jurisdiction:

> Dismissals for want of jurisdiction are not decisions on the merits, while those based on limitations are.
>
> \*    \*    \*    \*    \*    \*
>
> [D]ismissals for want of jurisdiction are paradigms of non-merits adjudication: they do not at all regard the merits of an

action; instead, they merely classify that action, whatever its merits, as one on which the court concerned cannot speak. A timebar determination, by contrast, assumes or decides that the court could have spoken but refuses to do so * * *. *Nilsen v. Moss Point,* 701 F.2d 556, 562 (5th Cir.1983) (citations omitted).

As recently as 1989, the Fifth Circuit reiterated that a dismissal by one federal court on statute of limitations grounds bars subsequent litigation of the same claim between the same parties in a second federal forum, particularly when the dismissal of the complaint is with prejudice. *Steve D. Thompson Trucking Inc. v. Dorsey Trailers Inc.,* 880 F.2d 818, 820 (5th Cir.1989). *See also Dillard,* 835 F.2d at 608 ("a dismissal with prejudice at any stage of a judicial proceeding ordinarily constitutes a final judgment on the merits which bars a later suit on the same cause of action").

Not only has the Fifth Circuit ruled that a dismissal based on the statute of limitations is a decision on the merits, but the Fourth Circuit, the Second Circuit, and the Sixth Circuit have likewise found such a dismissal as an adjudication on the merits. *See Shoup v. Bell & Howell Co.,* 872 F.2d 1178, 1179–80 (4th Cir.1989) (reversing district court's holding that because statute of limitations is procedural under state conflicts law, it merely bars the remedy and not the right, and ruling that federal district court's dismissal on statute of limitations grounds is final judgment on merits); *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 896 (2d Cir.) (longstanding rule in this Circuit is that a dismissal for failure to comply with statute of limitations will operate as adjudication on the merits, unless specifically stated to be without prejudice), *cert. denied,* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *Nathan v. Rowan,* 651 F.2d 1223, 1226 (6th Cir.1981) (summary judgment on the basis of the defense of the statute of limitations is judgment on the merits). *See also Ivary v. United States,* 3 Cl.Ct. 663, 665 (1983) (decision·of Claims Court that claim barred by statute of limitations is adjudication on the merits for purposes of *res judicata* ); *Schuster v. United States,* 1 Cl.Ct. 708, 710 (judgment

that plaintiff's claim barred by statute of limitations is "on the merits" for purposes of *res judicata* ), *aff'd,* 723 F.2d 69 (Fed. Cir.1983).

In view of this precedent, it is most difficult for this Court to be persuaded by the Government's argument that the district court judgment, based on the statute of limitations, is not a final judgment on the merits. Furthermore, prior to the district court's judgment, a two-day hearing was held with all parties and all attorneys in attendance, and the court heard oral arguments with respect to all the issues raised by both parties. When the judgment was thereafter issued on April 3, 1981, it specifically stated that the cause of action was dismissed *with* prejudice.

Although the Government characterizes the initial district court suit as an enforcement action of the administrative determination, rather than an action on the debt, the validity of the debt was certainly in issue before that court as demonstrated by the explicit language of its Memorandum and Order. In the opening sentence, the district court described the suits as "actions to recover certain payments made to [Doko Farms],"—not as actions to enforce a final determination of the USDA. If, in fact, the district court had viewed the proceeding before it as merely an enforcement action, it would have accepted the agency's determination that Doko Farms *had committed* a scheme or device to defeat the price support program. That acceptance, however, did not occur, and the court's doubt concerning Doko Farms' alleged actions is repeatedly expressed in its Memorandum and Order.

In describing the factual background of the suit, the district court clearly expresses its opinion as to the agency findings:

the government claims a refund of all payments received as a result of the *alleged* scheme or device.

The essence of the Defendants' [Doko Farms'] *supposed* scheme was a series of reconstitutions and transfers * * *. These actions *allegedly* led to extremely high support payments * * *.

*United States v. Doko Farms,* No. CA–5–79–72, Memorandum and Order at 2 (emphasis added). Furthermore, the court's description of the procedural history of the action concluded with this statement:

> Subsequently, the government brought suit in this Court for the refund of payments made during the course of the *alleged* scheme.

*Id.* at 3 (emphasis added). Clearly, by using these equivocal words, the district court had not adopted the findings of the agency and considered the issue of whether or not Doko Farms was liable for the refunds to be before the court for resolution.

After ruling that the suits were time barred as the "acts constituting the *alleged* scheme occurred and the statute of limitations began * * * in the spring of 1973," which was more than six years earlier, the district court did not deem its discussion of the matter to be complete. *Id.* at 6. It thereafter examined the constitutionality of the regulation, which provided the basis for the Government's action in seeking a refund of the payments. In reaching the conclusion that this regulation was unconstitutionally vague and overbroad, the district court explicitly pointed out that:

> The Defendants [Doko Farms] *fully complied* with every requirement listed in the regulations, their *actions were approved* by the county committee * * *. The government's witness Mr. Adams, who made the initial finding of a scheme or device, admitted in open court during the hearing on February 17 and 18 that Defendants had *violated no oth-*

er regulation or statute; their *conduct was completely proper.* * * *

> Moreover, the *Defendants were actually in compliance* with all other applicable provisions. * * * In other words the government complains about the final *effect* of the reconstitutions and transfers, and not about the *Defendants' actions which were completely legitimate under the regulations.*

*Id.* at 7 (emphasis added).

██ From this recitation, there is no doubt that the district court found Doko Farms' actions to be in compliance with the underlying regulation, which, in effect, annihilated the debt. Thus, even if the Government does not accept the precedents of the Fifth Circuit, Fourth Circuit, Sixth Circuit, Second Circuit, and the Claims Court that a statute of limitations dismissal is an adjudication on the merits, the Government cannot successfully challenge the second portion of the district court's ruling that the regulation is unconstitutional.[7]

The Government has effectively articulated the essence of the district court's judgment in its postulation:

> Had the United States filed an action and lost on the merits of the case (i.e., that Doko Farms had not violated the cotton program and had not fraudulently procured subsidy payments), then the United States would clearly lose on any subsequent claim because the debt no longer existed.

Defendant's Reply to Plaintiff's Opposition to Defendant's Cross–Motion for Summary Judgment at 8–9 n. 2. What the Govern-

---

**7.** The Court is aware of the factual similarities between the initial Doko Farms line of cases and those that were timely appealed by the Government, *i.e., United States v. Batson,* 706 F.2d 657 (5th Cir.1983). Despite the Fifth Circuit's holding in that case as to the statute of limitations and the constitutionality of the regulation, the Supreme Court has stated that the *res judicata* consequences of a final, unappealed judgment on the merits are not altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case. *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). The Supreme Court made it clear that there is no general

equitable doctrine which countenances an exception to the finality of a party's failure to appeal merely because those rights are closely interwoven with those of another party who successfully appeals. *Id.* at 400, 101 S.Ct. at 2428. Therefore, regardless of the decision reached by the Fifth Circuit in *Batson,* that does not impact the final unappealed judgment of the district court in Doko Farms. *See also National Ass'n of Broadcasters v. FCC,* 554 F.2d 1118, 1124 (D.C.Cir.1976) ("It is the generally accepted rule in civil cases that where less than all of the several co-parties appeal from an adverse judgment, a reversal as to the parties appealing does not necessitate or justify a reversal as to the parties not appealing.").

ment postulated is exactly what happened: the Government filed its action in the district court, and with the validity of the debt distinctly at issue before it, the court found that the action was barred by the statute of limitations and that the regulation was unconstitutional. A judgment on the merits has been rendered, which became final when not appealed. Therefore, as the Government has articulated, it will clearly lose on any subsequent claim since the debt no longer exists.

This does, however, imply that any subsequent claim of the Government must be identical to the claim that was previously alleged, decided on the merits, and dismissed with prejudice. As the doctrine of *res judicata* provides, only those causes of action that are the "same" are prohibited from being relitigated between the parties on any ground whatever. *See Nevada,* 463 U.S. at 130, 103 S.Ct. at 2918.

### B. Same Cause of Action

Although the district court judgment is a final judgment on the merits, Doko must still show that the Government's pending counterclaim is the same cause of action that was previously alleged and dismissed. As the Supreme Court enunciated in *Montana v. United States:*

> A fundamental precept of common-law adjudication, embodied in the * * * doctrine[ ] of * * * res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...."

440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (quoting *Southern Pac. R.R. Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897)).

What constitutes the "same cause of action" has not, however, remained static over time. *Nevada,* 463 U.S. at 130, 103 S.Ct. at 2918. The "same evidence" standard was one of the tests previously used to establish the same cause of action, *The Haytian Republic,* 154 U.S. 118, 125, 14 S.Ct. 992, 994, 38 L.Ed. 930 (1894), but the

Supreme Court has more recently announced a different test:

> A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong.... "The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. * * *"

*Nevada,* 463 U.S. at 130–31 n. 12, 103 S.Ct. at 2918–19 n. 12 (quoting *Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927)).

The Fifth Circuit similarly acknowledged that there is no one test for deciding whether the substance of two actions are the same for *res judicata* purposes; however, it recognized that "the principle test for comparing causes of action is whether or not the primary right and duty and delict or wrong are the same in each action." *Stevenson v. International Paper Co.,* 516 F.2d 103, 109 (5th Cir.1975) (quoting *Seaboard Coast Line R.R. Co. v. Gulf Oil Corp.,* 409 F.2d 879, 881 (5th Cir.1969)).

A more pragmatic approach has been adopted by our predecessor court, the Court of Claims, in determining what constitutes the same claim. Causes of action are the same if they arise from the same transaction, and

> [i]n deciding what factual grouping constitutes a transaction, and what groupings make a series of connected transactions, the * * * [court shall] giv[e] weight to such considerations as whether the facts are related in time, space, motivation or the like * * *.

*Container Transport Int'l, Inc. v. United States,* 199 Ct.Cl. 713, 718, 468 F.2d 926, 929 (1972).

The initial legal wrong asserted in the Government's original complaint filed in the district court for the Northern District of Texas in 1979 was that Doko Farms failed to refund the payments they had

previously received from the USDA, following the administrative determination that such refunds were due. It was the prosecution of this legal wrong that the district court found to be barred by the statute of limitations and the underlying regulation upon which this legal wrong was premised that the district court found to be unconstitutional.

In the Government's pending counterclaim, the action is designated as "an action brought by the United States against plaintiffs to recover a debt as determined by a final agency determination of liability." In fact, the counterclaim contains several paragraphs that are exact duplicates of the paragraphs contained in the complaint filed in 1979. The remainder of the counterclaim allegations are simply paraphrased versions of the original numbered allegations in the Government's initial complaint.

To overcome this challenge of being the same claim, the Government urges that these two claims are different. First, the Government points out that its pending counterclaim is not a collateral attack on the district court judgment, asserting that the statute of limitations did not run on its original affirmative claim. Second, according to the Government, its counterclaim is asserted under different statutes than were previously relied upon, *i.e.*, it is now relying upon 28 U.S.C. §§ 1503, 2508, and in its original complaint, it sued under 15 U.S.C. § 714b(c) (1988) and 28 U.S.C. § 1345.

It is the Government's theory that the statute of limitations in 28 U.S.C. § 2415(f), does not bar the assertion of a counterclaim, and because this right to assert a counterclaim was not procedurally possible in its original action, since the Government was then the plaintiff, this is a different claim. Further, because the dismissal by the district court was based on the statute of limitations found at 15 U.S.C. § 714b(c), the Government believes that this dismissal does not bar its current claim, which is in a different forum under a different statute of limitations.

Although the Government concedes that it is barred from bringing a second action in the district court under 15 U.S.C. § 714b(c), it is difficult to comprehend how the Government can attempt to assert a subsequent claim in another federal forum, seeking the identical relief, and yet argue it is not the same claim because a different statute of limitations applies, which is triggered only because of the procedural posture of this action. This is a classic example of arguing form over substance.

Both the Fourth and Fifth Circuits have been confronted with the applicability of a dismissal based on the statute of limitations by one federal court on a second federal forum involving the same claim between the same parties. *See Steve D. Thompson Trucking*, 880 F.2d at 820 & n. 1; *Shoup*, 872 F.2d at 1179–80. The conclusion of both Circuits was that the dismissal was a decision on the merits, precluding subsequent litigation of the same claim in another federal court. *Steve D. Thompson Trucking*, 880 F.2d at 820; *Shoup*, 872 F.2d at 1181–82.

As to the Government's contention that by utilizing different statutes of limitations, this cause of action is "significantly different than its original claim," the Sixth Circuit has addressed this issue:

> Where two successive suits seek recovery for the same injury, a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit.

*Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir.1978) (citing *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319–21, 47 S.Ct. 600, 601–03, 71 L.Ed. 1069 (1927)). Regardless of which statute of limitations is invoked, both suits seek to remedy the same single alleged wrong—Doko's failure to refund the alleged overpayments. Form cannot supersede substance. *See Astron Industrial Assoc., Inc. v. Chrysler Motors Corp.*, 405 F.2d 958, 961 (5th Cir.1968) ("[i]n regard to the identity of the two lawsuits, it is the substance of the actions that must be compared and not their form.").

Merely because the Government is now in a procedural position that allows it to

assert a counterclaim, which triggers a different statute of limitations, this role reversal cannot convert the substance of the claim into a different one. Even though this theory of recovery, *i.e.*, asserting a counterclaim, was not procedurally available at the time of the former suit, presenting the same argument in somewhat different terms is not sufficient to avoid the doctrine of *res judicata*. See *Bander v. United States*, 161 Ct.Cl. 475, 481–82 (1963) (subsequent change of law giving rise to new defense is insufficient to overcome application of *res judicata* when same cause of action is relitigated).

If the principles of *res judicata* could be circumvented this easily, the doctrine would be quickly eroded, and the goals this doctrine were designed to achieve would soon become obscure. *Res judicata:*

> ensures "the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if ... conclusiveness did not attend the judgment of such tribunals."

*Nevada*, 463 U.S. at 129, 103 S.Ct. at 2917–18 (quoting *Southern Pac. R.R. Co. v. United States*, 168 U.S. 1, 49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897)).

When applying any of the standards for determining if the "same cause of action" exists, the Government's theory that its pending counterclaim is significantly different than its original claim cannot rebut the dictates establishing the same claim. Clearly, the same evidence would be presented to support both the pending counterclaim as would have been presented in the original claim. Furthermore, irrespective of the variety of facts alleged by the Government, *i.e.*, relying on different statutes of limitations by virtue of its procedural posture, there is but one right alleged to have been violated by one legal wrong: funds allegedly owing to the Government have not been repaid by Doko.

Furthermore, the facts of the underlying claim and the pending counterclaim could not be any more related in time, space, and motivation—the facts are identical.

There is no doubt that the Government's causes of actions, as alleged in its original complaint filed in 1969 and in its pending counterclaim, are the same; and therefore, the Government cannot overcome this element of *res judicata*. To fully implement the doctrine of *res judicata*, however, the observance of one last prerequisite must be met: the parties in the instant proceeding must be identical to, or in privity with, the parties in the previous action.

### C. Identical Parties

■ In order for Doko to succeed on its argument that the Government's counterclaim is barred by *res judicata*, they must show that the parties bound by the final judgment of the district court are the same parties now before this Court seeking an adjudication on the same cause of action. While Doko states that there is no contention that different parties are involved, the Government's response is that the parties have now assumed different roles. Therefore, since the plaintiff and defendants in the original action are not in the same position as the plaintiffs and defendant in the pending action, the Government contends that *res judicata* is not applicable.

Merely considering the purposes behind the doctrine of *res judicata* exposes the illogical reasoning advanced by the Government. As the Supreme Court explained, applying *res judicata*

> preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana*, 440 U.S. at 153–54, 99 S.Ct. at 973–74 (footnote omitted). If, by simply changing procedural positions, the parties could continue to litigate the disputed issues, *res judicata* would no longer exist. According to the Government's theory, a

losing defendant could thereafter reinstate suit as a plaintiff against the former plaintiff, but a losing plaintiff would be barred from doing so under *res judicata*. It is difficult for this Court to accept such an interpretation of this doctrine.

Furthermore, the Government's argument is contrary to the rule as declared by the Supreme Court:

> [T]he general rule is that a prior judgment will bar the "parties" to the earlier lawsuit * * * from relitigating the cause of action.

*Nevada*, 463 U.S. at 135, 103 S.Ct. at 2920–21 (citing *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877)). This rule does not state, however, that only those plaintiffs who receive an adverse judgment will be barred from initiating another action. In fact, the Restatement (Second) of Judgments § 19 (1982), clarifies any ambiguity on this issue. After stating the rule that a judgment in favor of a defendant bars the plaintiff from instituting another action on the same claim, comment c specifically addresses counterclaims:

> The rule stated in this Section is applicable not only to a case in which the plaintiff brings another action against the defendant on the same claim, but also to one in which the plaintiff seeks to avail himself of the original claim by interposing it as a counterclaim in a subsequent action brought by the defendant against him.

Restatement (Second) of Judgments § 19 comment c (1982).

There is no dispute that the parties to the earlier suit are the same parties now before this Court, and it is irrelevant that Doko was the defendant in the previous action and is now the plaintiff. *See Towers, Perrin, Forster & Crosby, Inc. v. Brown*, 732 F.2d 345, 348 (3d Cir.1984) (fact that plaintiffs were defendants in state court action and are now plaintiffs in federal court not relevant in *res judicata* challenge); *Davis v. United States Steel Supply, Div. of United States Steel Corp.*, 688 F.2d 166, 171 (3d Cir.1982) (plaintiff and defendant were opposing parties in

both actions and current defendant's ability to assert *res judicata* not undermined because it was the party instituting previous action), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983).

Disputes would rarely be conclusively resolved if parties could persist in litigating the same cause of actions by simply switching sides and then stating that the action has subsequently become a different one because of the different remedies now available to the parties in their respective new roles. The Government is once again urging this Court to accept an argument based on form over substance, which this Court will not do.

Clearly, all the elements of *res judicata* exist so as to bar the Government's counterclaim: the district court entered its final judgment on the merits; the cause of action currently asserted is the same cause of action that was previously adjudicated; and the parties in both actions are identical. Therefore, this Court cannot decline to apply the doctrine, barring the Government's counterclaim, as:

> There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata.*"

*Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) (quoting *Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946)). *See also Red Lake Band v. United States*, 229 Ct.Cl. 272, 274, 667 F.2d 73, 74 (1981) (*res judicata* is strictly applied—"the fact that a person will never have his day in court on a certain issue will not, by itself, bar the application of the doctrine.") (footnote omitted).

In view of the Court's decision that the Government's pending counterclaim is foreclosed by *res judicata*, the remaining issue of Doko Farms' affirmative claim must be resolved. With the validity of the debt having been decided by the district court, Doko claims that the continued administrative offset and the maintenance of their names on the debt register are unlawful.

### III. *Doko Farms' Pending Affirmative Claim*

The plaintiffs' pending action before this Court is Doko Farms' initial counterclaim that was originally severed by the district court in 1981. It is Doko's position that the district court's "taking nothing" judgment extinguished any liability of Doko Farms to the Government; and therefore, no legal basis exists for the Government to maintain their names on the debt register and to retain the subsidy funds that were and are still due them.

In rebuttal, the Government maintains that pursuant to 7 C.F.R. § 13.3, it has the authority to withhold the funds since there has been a serious breach or violation of program requirements and such withholding is necessary to protect the financial interest of the Government.

When Doko initially asserted its counterclaim against the Government in the district court action, the relief sought was merely the flip side or the consequence of denying the Government's claim. The district court confirmed this characterization in its third judgment when it stated:

> [The Government's] claim against [Doko] for any alleged overpayment is barred by limitations. Therefore the Government lacks any grounds for continuing to withhold the funds. The dispute between the Government and [Doko] has been judicially and finally resolved.
>
> Although the dispute has been resolved in favor of [Doko Farms] * * *, they have been effectively denied any relief by the continuance of their names on the debt register and the refusal to allow benefits to which they would otherwise be entitled. Such a result is unjust and [Doko is] to be given relief and placed in a position to which they are entitled because of the judgment in their favor.

*Doko Farms*, 588 F.Supp. at 870.

■ This conclusion of the district court is not only logical, but proper in view of the nature of Doko's original counterclaim. Although the original counterclaim was severed by the district court, which, as noted by the Fifth Circuit, was "perhaps erroneous," *O'Neil*, 709 F.2d at 371, it was a compulsory counterclaim, as it arose from the same aggregate of operative facts as the Government's claim. *See Plant v. Blazer Fin. Serv. Inc.*, 598 F.2d 1357, 1361 (5th Cir.1979) (test for compulsory counterclaim is logical relation between claim and counterclaim, permitting a broad realistic interpretation in interest of avoiding multiplicity of suits). As such, this compulsory counterclaim is the classic example of ancillary jurisdiction, which granted the district court jurisdiction over the claim even in the absence of an independent basis for federal jurisdiction. *Zurn Industries, Inc. v. Acton Const. Co.*, 847 F.2d 234, 236–37 (5th Cir.1988); *see also Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 291–92 (5th Cir.1989) (counterclaims found to be compulsory because they arose from the same transaction and thus fall within court's ancillary jurisdiction and do not require independent jurisdictional basis).

In severing Doko's counterclaim, the district court relied on the Second Circuit's decision in *Spencer, White & Prentis Inc. v. Pfizer, Inc.*, 498 F.2d 358 (2d Cir.1974), which noted that even though a counterclaim is compulsory, it is not *per se* precluded from severance. *Id.* at 361. Despite the district court's severance at the time of its initial judgment, when the court granted Doko's motion for summary judgment on their counterclaim, it acknowledged the compulsory nature of the counterclaim:

> It appears that the listing in the Claims Control Record as well as the withholding of due payments *were related to the main cause of action* in these cases. Since the court found [that Doko Farms] were not liable for the alleged overpayments, there appears to be no legal basis for the retention of monies due [Doko].

*United States v. Doko Farms*, No. CA–5–79–72–A, Memorandum and Order at 3 (N.D.Tex. Sept. 15, 1981) (emphasis added).

Notwithstanding the authority and discretion of a court to sever claims under Fed.R.Civ.P. 21, when all of the claims arise from the same nucleus of facts and

the severance would serve no end but to create duplicative trials and contribute to inefficient administration of justice, courts have refused to sever the claims. *See Spence v. Flynt,* 647 F.Supp. 1266, 1274 (D.Wyo.1986). *See also* 3A J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 21.05[2] at 21–44 n. 36 (2d ed. 1989) ("While separate trial of a counterclaim is within the plain terms of Rule 42(b), and entry of a separate judgment on a counterclaim is within the terms of Rule 54(b), separate judgments on a claim and related counterclaim have not been favored. * * * [T]hey are still not favored when they are produced by purported severance under Rule 21.").

Here, there is no question that the Government's original claim and Doko's counterclaim arose from the same transaction or occurrence, since both related to the same time period, relied on the same theory, and rested on the same footing. *Yosemite Park & Curry Co. v. United States,* 225 Ct.Cl. 657, 658–59 (1980). *See also Sea–Land Serv., Inc. v. United States,* 204 Ct.Cl. 57, 81–82, 493 F.2d 1357, 1371 (even though main claim related to one contract and counterclaim related to a different contract, both claims arose from same transaction since the contracts involved the same ships, were executed on same day, and incorporated each other by reference), *cert. denied,* 419 U.S. 840, 95 S.Ct. 69, 42 L.Ed.2d 67 (1974).

The Government instituted suit against Doko in the district court in Texas to collect the balance of overpayments allegedly made under the cotton price support program, after having withheld approximately $100,000 from Doko's earnings. Doko filed their counterclaim seeking: (1) the removal of their names from the debt register, which, in essence, was the remedy for declaring that Doko no longer owed the Government any money, and (2) the release of all withheld funds, which would have been an automatic consequence of being removed from the debt register.

This transaction clearly fits within the Supreme Court's characterization of compulsory counterclaims:

> So close is the connection between the case sought to be stated in the [Government's original complaint] and that set up in the counterclaim, that it only needs the failure of the former to establish a foundation for the latter * * *.

*Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926). *See also United States v. Eastport S.S. Corp.,* 255 F.2d 795, 805 (2d Cir.1958) (applying the language of *Moore,* the court ruled that "the failure of the Government's claim not only would have laid a foundation for Eastport's claim; it would have established it. Conversely, the failure of Eastport to establish its claim for interest would have established the Government's claim * * *.").

█ In this case, the Government's original claim has been conclusively decided by the district court, finding the alleged debt to be invalid. Once that issue was resolved, Doko Farms' counterclaim was, likewise, resolved as the relief sought by the counterclaim was the natural consequence of declaring the action time barred and the underlying regulation unconstitutional. The validity of the debt had been placed before the district court for resolution, and the court ruled that the debt was invalid and that the Government take nothing from Doko Farms. Consequently, no legal basis remains that would justify the Government's continued withholding of Doko Farms' funds and its retention of their names on the debt register.

There is no question of the finality of the district court's judgment, having been affirmed by the Fifth Circuit, *United States v. O'Neil,* 709 F.2d at 375 ("we affirm the district court in the government's suits against appellees [Doko Farms]"), and thus, the issue of plaintiffs' liability has been settled. Therefore, Doko Farms' affirmative claim before this Court must be granted in view of the district court's "take nothing" judgment and the subsequent affirmance by the Fifth Circuit. With the debt extinguished, the only mandate that could result is the removal of plaintiffs' names from the debt register and the return of the withheld funds.

IV. *Relief Granted by Final Judgment of District Court*

Although the Government relies on 7 C.F.R. § 13.3 (1988) and the Fifth Circuit's decision in *Hilburn v. Butz*, 463 F.2d 1207 (5th Cir.1972), *cert. denied*, 410 U.S. 942, 93 S.Ct. 1359, 35 L.Ed.2d 608 (1973), to support its authority to withhold Doko Farms' funds, that reliance is misplaced. Pursuant to 7 C.F.R. § 13.3, "[w]ithholding shall be made * * * [w]here *there has been a* serious breach of contract or *violation of program requirements*," (emphasis added), and similarly, the Fifth Circuit ruled that the Secretary of the Department of Agriculture "had a right to withhold current funds in sums equal to the amounts administratively determined to have been overpaid in prior years, at least *until such time as the issues relating to these overpayments have been judicially determined* * * *." *Hilburn*, 463 F.2d at 1208 (emphasis added).

Both of these authorities explicitly require a final ruling or a judicial determination that the alleged wrong has, indeed, occurred. That, however, has not happened in this action. On the contrary, the district court, with the validity of the debt at issue before it, found the actions to be barred by the statute of limitations and the regulation that Doko Farms allegedly violated to be unconstitutionally vague and overbroad. The finality of this judgment was thereafter affirmed by the Fifth Circuit as follows:

> Accordingly, we affirm the district court in the government's suits against appellees [Doko Farms].

*United States v. O'Neil*, 709 F.2d at 375. Consequently, the Government no longer has a debt due and owing by Doko and can no longer justify maintaining Doko Farms' name on the debt register and withholding funds due the plaintiffs on this and other agriculture subsidies earned as an administrative offset.

Furthermore, the regulations pertaining to administrative offset, 4 C.F.R. §§ 102.1 *et. seq.*, set forth the procedures for collecting the debt and state that:

> Amounts withheld but later determined not owing to the Government shall be promptly refunded.

4 C.F.R. § 102.3(b) (1982). The language in the final judgment of the district court could not be more precise: "[i]t is Ordered and Adjudged that the plaintiff, United States of America, take nothing of and from [the] defendants, Doko Farms, * * *." *United States v. Doko Farms*, No. CA-5-79-72, Judgment. Thus, once the determination was made that the debt no longer existed, the Government cannot ignore the dictates of this regulation requiring that a refund be promptly made.

This prolonged pursuit of this matter by the Government is precisely the type of activity that *res judicata* was designed to prevent. It is a principle of peace designed to put an end to litigation, regardless of whether the case was rightly or wrongly decided. Once the issue has been settled by the judgment of a court of competent jurisdiction, the issue is to remain settled. *See Stevenson*, 516 F.2d at 109.

The district court in Texas, a court of competent jurisdiction over the Government's initial claim, entered its final judgment on the merits that the Government did not have a claim against Doko, and therefore, could not "take" anything from Doko. The issue was settled then by the district court; affirmed as final by the Fifth Circuit; and must remain settled now. Therefore, since the debt was determined to be extinguished, the Government can no longer justify and substantiate its actions of retaining Doko Farms' names on the debt register and withholding their funds in direct contravention of the regulation.

In addition to returning the withheld funds, the Government shall pay Doko Farms interest on the sums withheld at the rate of six percent from the date of the district court's final order of April 3, 1981, finding the debt no longer existed. This interest award is in compliance with the statutory authority found at 31 U.S.C. § 3728(c) (1988), which provides:

> (c) If the Government loses a civil action to recover a debt or recovers less

than the amount the Comptroller General withholds under this section, the Comptroller General shall pay the plaintiff the balance and interest of 6 percent for the time the money is withheld.

The Court of Claims, this Court's predecessor, has applied this interest provision when it found that the plaintiff was not indebted to the Government for any amount and the Government had wrongfully withheld funds from the plaintiff. *See Eastport S.S. Corp. v. United States*, 135 Ct.Cl. 175, 179, 140 F.Supp. 773, 775 (1956) ("[i]f plaintiff was not so indebted, then the withholding was wrongful and plaintiff is entitled to recover interest on the amount withheld from the time it was withheld until the time it was paid"); *Aluminum Cooking Utensil Co. v. United States*, 90 Ct.Cl. 187, 188 (1940) (withholding of amounts due plaintiff to offset nonexisting but alleged debt was wrongful and entitles plaintiff to interest at 6 percent from date of wrongful withholding); *Helvetia Milk Condensing Co. v. United States*, 77 Ct.Cl. 743, 745, 3 F.Supp. 662 (no overpayments were made by Government to plaintiff on milk contracts and Government's counterclaim for recovery denied, entitling plaintiff to judgment and interest at 6 percent), *cert. denied*, 290 U.S. 671, 54 S.Ct. 90, 78 L.Ed. 580 (1933).

Since the debt of Doko Farms was extinguished by the district court on April 3, 1981, the Government wrongfully continued to withhold Doko Farms' subsidy funds, entitling plaintiffs to recover interest on the sums withheld.

## CONCLUSION

For the reasons stated above, Doko Farms' motion for summary judgment is granted, and the Government's cross-motion is denied. The Government's counterclaim is barred by the doctrine of *res judicata*. In addition, the plaintiffs are entitled to have the Government remove Doko Farms' names from the debt register and release all the subsidy funds currently withheld from Doko Farms. In the event the parties are unable to stipulate within 30 days as to the exact amount due, including

interest, further proceedings will be necessary and the parties shall file status reports in that regard.